987 P.2d 300

Rejena COGHLAN; Pamela J. Clarke, individually and as parent and guardian ad litem of Thomas Adam Coghlan and Michael J. Clarke, Jr.; Michael J. Clarke; Thomas Adam Coghlan, individually; and Michael J. Clarke, Jr., individually, Plaintiffs–Appellants,

v.

BETA THETA PI FRATERNITY, an Ohio nonprofit corporation; Sigma Alpha Epsilon Fraternity, an Illinois nonprofit corporation; Pi Kappa Alpha Fraternity, a Tennessee nonprofit corporation; Alpha Phi Sorority, an Illinois nonprofit corporation; and The University of Idaho; The Idaho State Board of Education; and John Does I–X, Defendants–Respondents.

No. 24318.

Supreme Court of Idaho,
Lewiston, April 1999 Term.

Aug. 30, 1999.

Rehearing Denied Nov. 10, 1999.

Brady Lerma, Chtd., Boise; Spence, Moriarity & Schuster, L.L.C., Jackson, Wyoming, for appellants. G. Bryan Ulmer, III argued.

Keefe, King & Bowman, P.S., Spokane, Washington, for respondent Alpha Phi Sorority. Christopher J. Kerley argued.

Cosho, Humphrey, Greener & Welsh, Boise, for respondents University of Idaho and Idaho State Board of Education. Richard H. Greener argued.

Creason, Moore, Dokken & McIntosh, P.L.L.C., Lewiston, for respondent Pi Kappa Alpha Fraternity. Theodore O. Creason argued.

Johnson, McLean, Devlin & Miller, Spokane, Washington, for respondent Beta Theta Pi Fraternity. J. Scott Miller argued.

Lynch & Associates, P.L.L.C., Boise, for respondent Sigma Alpha Epsilon Fraternity. Katherine M. Lynch argued.

SILAK, Justice.

This is a tort action filed by a University of Idaho student who was injured when she fell, while intoxicated, from the third-story fire escape of her sorority house.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Facts

On August 19, 1993, Rejena Coghlan (Coghlan) was an eighteen-year-old freshman at the University of Idaho who had recently been notified of her admission to the Alpha Phi Sorority. At that time, the University of

Idaho (University) and campus fraternities and sororities were celebrating the end of "Rush Week," which is an event sponsored and sanctioned by the University in conjunction with campus fraternities and sororities. On that day, Coghlan attended an Alpha Phi house meeting where she learned that the Alpha Phi members were invited to attend several parties sponsored by campus fraternities celebrating the end of "Rush Week." At the meeting, Alpha Phi's alcohol policy prohibiting underage drinking was briefly discussed, and Coghlan was assigned a "guardian angel" by the sorority. The "guardian angel" was an active member of the sorority who was supposed to provide Coghlan with assistance during the night's activities. Afterward, however, Coghlan's "guardian angel" allegedly told Coghlan that she would not be "hanging out" with her that night.

Later that evening, Coghlan attended two fraternity parties: one jointly sponsored by the Sigma Alpha Epsilon (SAE) and Pi Kappa Alpha (PKA) Fraternities which was held at the SAE Fraternity house and entitled the "Jack Daniels' Birthday" party, and the other held at the Beta Theta Pi (BTP) Fraternity house entitled the "Fifty Ways to Lose Your Liver" party. Two University of Idaho employees, both Greek advisors for the University, were in attendance at the BTP party. Coghlan alleges that one of the employees saw Coghlan at the BTP party and congratulated her for pledging Alpha Phi Sorority. Coghlan alleges that she was served beer and whiskey at the SAE/PKA party, and she was served mixed hard alcohol at the BTP party. She did not have any identification in her possession, and she was not asked at either party for identification prior to being served.

As a result of Coghlan's drinking at the fraternity parties, she became intoxicated and distraught. Coghlan was eventually escorted home by a sorority sister and put to bed in the third floor sleeping area of the Alpha Phi Sorority house. She later fell thirty feet from the third floor fire escape

platform to the ground below. Coghlan was discovered a short time later lying in some bushes below the third floor fire escape landing. She was taken into the house and paramedics were called. As a result of her fall, she sustained permanent injuries.

## B. Procedural Background

On August 17, 1995, Coghlan and members of her family (collectively appellants) filed a Complaint and Demand for Jury Trial seeking damages for injuries sustained from her fall from the Alpha Phi Sorority house. In her complaint, Coghlan alleges that the negligent and wrongful acts or omissions of the University, the fraternities which sponsored the parties she attended, and the Alpha Phi Sorority were the direct and proximate cause of her injuries and resulting damages. The district court dismissed Coghlan's claims against the University and the Idaho State Board of Education (University defendants) pursuant to I.R.C.P. 12(b)(6), holding that the University owed no duty of care to Coghlan.[1] The district court also granted summary judgment in favor of the BTP and PKA Fraternities holding that the unambiguous language of I.C. § 23–808, Idaho's "Dram Shop" Act, bars suits by intoxicated persons against the server of alcohol and, in turn, bars any suits which are derivative of the intoxicated person's suit. The district court granted SAE Fraternity's motion for summary judgment on the same ground. On June 18, 1997, the district court granted summary judgment in favor of Alpha Phi, and, after permitting the plaintiffs to amend their complaint to seek recovery from Alpha Phi on a premises liability theory, the district court granted summary judgment again in favor of Alpha Phi on October 7, 1997.

Coghlan and her family members appeal from an order granting the University defendants' motion to dismiss pursuant to I.R.C.P. 12(b)(6), an order granting summary judgment in favor of BTP and PKA, an order granting summary judgment in favor of SAE, and orders granting summary judgment in favor of Alpha Phi Sorority.

---

1. Because the district court found that the University defendants owed no duty of care to Coghlan, the district court did not address the University's assertion of immunity under I.C. § 6–904A. Accordingly, we express no opinion on the application of I.C. § 6–904A to this case.

## II.

## ISSUES ON APPEAL

The appellants present the following issues on appeal:

A. Whether the trial court erred in holding that Idaho's "Dram Shop" Act prohibits Coghlan from bringing a cause of action against the negligent providers of alcohol.

B. Whether the trial court erred in holding that the University defendants owed no duty of care to Coghlan.

C. Whether the trial court erred in holding that Alpha Phi Sorority owed no duty of care to Coghlan.

## III.

## ANALYSIS

**A. The Trial Court Did Not Err In Holding That Idaho's "Dram Shop" Act (I.C. § 23–808) Prohibits Rejena Coghlan From Bringing A Cause Of Action Against The Providers Of Alcohol.**

The appellants argue that the district court erred in holding that Idaho's Dram Shop Act, I.C. § 23–808, barred Coghlan's claims seeking to impose liability on the BTP, PKA, and SAE Fraternities and the Alpha Phi Sorority for providing alcohol to Coghlan. The district court ruled that Idaho's Dram Shop Act, I.C. § 23–808, does not recognize actions brought by intoxicated persons against the server of alcoholic beverages. Idaho's Dram Shop Act provides in part:

23–808. **Legislative finding and intent—Cause of action.—**

(1) The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to limit dram shop and social host liability; provided, that the legislature finds that the furnishing of alcoholic beverages may constitute a proximate cause of injuries inflicted by intoxicated persons under the circumstances set forth in subsection (3) of this section.

(2) No claim or cause of action may be brought by or on behalf of any person who has suffered injury, death or other damage caused by an intoxicated person against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, except as provided in subsection (3) of this section.

(3) A person who has suffered injury, death or any other damage caused by an intoxicated person, may bring a claim or cause of action against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, only if:

(a) The intoxicated person was younger than the legal age for the consumption of alcoholic beverages at the time the alcoholic beverages were sold or furnished and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known at the time the alcoholic beverages were sold or furnished that the intoxicated person was younger than the legal age for consumption of the alcoholic beverages; or

(b) The intoxicated person was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated.

(4)(a) No claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or representatives.

I.C. § 23–808.

█ The district court correctly held that the unambiguous language of I.C. § 23–808(4)(a) prevents Coghlan from recovering from the providers of alcohol in this case. *See Wolfe v. Farm Bureau Ins. Co.,* 128 Idaho 398, 404, 913 P.2d 1168, 1174 (1996) (where statutory language is clear and unambiguous, the Court must give effect to the clear, explicit intent of the legislature and does not engage in statutory construction). Appellants do not challenge the district court's interpretation of the plain meaning of the statute, but instead challenge the consti-

tutionality of I.C. § 23–808 on various grounds.

1. **I.C. § 23–808(4)(a) does not violate the equal protection guarantees of the Idaho and United States Constitutions.**

Appellants first argue that applying I.C. § 23–808(4)(a) to permit recovery by third parties, but not intoxicated persons, is a classification which violates the equal protection guarantees of the Idaho and United States Constitutions. Appellants contend that I.C. § 23–808 impermissibly discriminates against intoxicated persons who are negligently provided alcohol in that the statute prevents them from maintaining an action against negligent providers of alcohol while at the same time permitting actions by third parties injured by an intoxicated person.

■ The first step in an equal protection analysis is to identify the classification under attack. The second step is to articulate the standard under which the classification will be tested, and the third step is to determine whether the standard has been satisfied. *See Tarbox v. Tax Comm'n*, 107 Idaho 957, 959–60, 695 P.2d 342, 344–45 (1984). "An act of the legislature is presumed to be constitutional, but whether the act is reasonable or arbitrary or discriminatory is a question of law for determination by this Court." *Bon Appetit Gourmet Foods, Inc. v. Dep't of Employment*, 117 Idaho 1002, 1003, 793 P.2d 675, 676 (1989) (citing *Weller v. Hopper*, 85 Idaho 386, 379 P.2d 792 (1963)).

■ This Court recently set forth the analysis to apply to equal protection challenges under both the Idaho and United States Constitutions in *Meisner v. Potlatch Corp.*, 131 Idaho 258, 954 P.2d 676 (1998). For equal protection challenges to statutes under the United States Constitution, three levels of scrutiny are used. These are strict scrutiny, intermediate scrutiny, and rational basis. *See id.* at 261, 954 P.2d at 679 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313, 320–21 (1985)). The Court in *Meisner* stated that the analysis of equal protection claims under the Idaho Constitu-

tion is very similar. "Three standards of equal protection analysis have been recognized in Idaho: strict scrutiny, means-focus, and rational basis." *Id.* (citing *Leliefeld v. Johnson*, 104 Idaho 357, 373, 659 P.2d 111, 127 (1983)). The appellants concede that strict scrutiny is not appropriate since neither a fundamental right nor a suspect class is involved in this case.

■ To survive scrutiny under the intermediate test, a statutory classification "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407 (1976). The United States Supreme Court, however, has applied intermediate scrutiny only to classifications involving either gender or illegitimacy. *See, e.g., United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996); *Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). Since the classification at issue here involves neither gender nor illegitimacy, intermediate scrutiny is not applicable to this case under federal constitutional analysis. Instead, appellants argue that the "means focus" intermediate standard should be applied, while the respondents argue that the rational basis test is the appropriate standard.

a. **The "means-focus" test**

■ Appellants assert that the "means-focus" intermediate level of equal protection scrutiny should be applied to I.C. § 23–808. In *Jones v. State Bd. of Med.*, 97 Idaho 859, 555 P.2d 399 (1976), this Court adopted the intermediate "means-focus" scrutiny, defining it as requiring that a statutory classification, to pass muster under this intermediate level of scrutiny, must "substantially further[ ] some specifically identifiable legislative end." *Id.* at 867, 555 P.2d at 407. However, the Court stated that this new standard would be employed only "where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute." *Id.*

at 871, 555 P.2d at 411; *see also Tarbox v. Tax Comm'n*, 107 Idaho at 960, 695 P.2d at 345 (stating that the "means-focus" scrutiny will only be applied where the challenged classification is "blatantly" discriminatory).

Appellants contend that "means-focus" scrutiny should be applied because the classification scheme at issue here is blatantly discriminatory, in that it isolates a particular class of plaintiffs and affirmatively disallows a cause of action for the isolated class. Appellants also argue that the classification is patently unrelated to the statute's purpose of limiting dram shop and social host liability for injuries caused by an intoxicated person. Appellants urge this Court to hold that the district court erred in failing to apply "means-focus" scrutiny to what appellants argue is "blatant" discrimination.

Recently, the Court refused to apply means-focus scrutiny unless the classification at issue involves a fundamental right or is invidiously discriminatory. *See Meisner v. Potlatch Corp.*, 131 at 262, 954 P.2d at 680. In *Meisner*, the Court reaffirmed its previous statement that means-focus scrutiny will be applied only "where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute." *Meisner*, 131 Idaho at 261, 954 P.2d at 679 (citing *Jones v. State Bd. of Med.*, 97 Idaho 859, 871, 555 P.2d 399, 411 (1976)).

This Court has also previously recognized that "[n]ot every legislative classification which treats different classes of people differently can be said to be 'discriminatory,' much less 'obviously' 'invidiously discriminatory.'" *State v. Beam*, 115 Idaho 208, 212, 766 P.2d 678, 682 (1988). "For a classification to be 'obviously' 'invidiously discriminatory,' it must distinguish between individuals or groups either odiously or on some other basis calculated to excite animosity or ill will." *Id.* I.C. § 23–808 limits dram shop liability to those persons who are innocently injured as a result of the negligent provision of alcohol. Preventing intoxicated persons from recovering from the negligent providers of alcohol furthers this purpose and is not

calculated to excite animosity or ill will. The classification at issue here is neither invidiously discriminatory nor does it involve a fundamental right. Therefore, means-focus scrutiny is not applicable to this case.

**b. The rational basis test**

Because we find that means-focus scrutiny is inapplicable to this case, the rational basis test is the applicable level of scrutiny in this case. It is well settled that the state has wide discretion to enact laws affecting some groups of citizens differently than others, and the legislature is presumed to have acted within its constitutional power despite the fact that the enforcement of a statute results in some inequality. *See Newlan v. State*, 96 Idaho 711, 714, 535 P.2d 1348, 1351 (1975). In *Meisner*, the Court stated that "[u]nder either the Fourteenth Amendment or the Idaho Constitution, a classification will survive rational basis analysis if the classification is rationally related to a legitimate governmental purpose." 131 Idaho at 262, 954 P.2d at 680 (citing *Lyng v. Int'l Union, U.A.W.*, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988); *Idaho Schs. for Equal Educ. v. Evans*, 123 Idaho 573, 850 P.2d 724 (1993)). The issue thus becomes whether the statutory prohibition against intoxicated persons' tort recovery from negligent providers of alcohol is rationally related to a legitimate state purpose.

On rational basis review, courts do not judge the wisdom or fairness of the legislation being challenged. *See Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993). The United States Supreme Court has held that "[o]n rational-basis review, a classification in a statute ... comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Federal Communications Comm'n*, 508 U.S. at 314–15, 113 S.Ct. at 2101–02, 124 L.Ed.2d at 222. This Court also recognized in *Meisner* that "[u]nder the 'rational basis test,' a classification will withstand an equal protection challenge if there is any conceivable state of facts

which will support it." 131 Idaho at 262, 954 P.2d at 680 (citing *Bint v. Creative Forest Prod.*, 108 Idaho 116, 120, 697 P.2d 818, 822 (1985)).

Prohibiting persons who become intoxicated from recovering from negligent providers of alcohol both limits dram shop and social host liability and discourages irresponsible consumption of alcohol. We therefore find that the disparate treatment of intoxicated persons under I.C. § 23–808 is rationally related to legitimate governmental purposes. Accordingly, we hold that I.C. § 23–808 does not violate the Equal Protection Clauses of the Idaho or United States Constitutions.

### 2. The Idaho legislature acted within its constitutional powers in passing I.C. § 23–808.

Appellants assert that I.C. § 23–808 impermissibly revives the doctrine of contributory negligence in the State of Idaho contrary to the command of I.C. § 6–801, which provides that comparative negligence applies in negligence actions. *Id.* I.C. § 6–801 provides:

> **6–801. Comparative negligence or comparative responsibility—Effect of contributory negligence.**—Contributory negligence or comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property, if such negligence or comparative responsibility was not as great as the negligence, gross negligence or comparative responsibility of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence or comparative responsibility attributable to the person recovering. Nothing contained herein shall create any new legal theory, cause of action, or legal defense.

*Id.* Appellants assert that I.C. § 23–808(4) directly conflicts with the current state of the law in Idaho.

In support of the argument that I.C. § 6–801 prevents the enforcement of the clear terms of I.C. § 23–808(4), appellants cite to cases in which this Court rejected the application of the common law defenses of "assumption of the risk" and "open and obvious danger" to negligence actions in Idaho following the passage of I.C. § 6–801. *See Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985); *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989). Appellants' reliance on these cases is misplaced. Both *Salinas* and *Harrison* involve the application of common law defenses to negligence actions, which operate as complete defenses, and the application of which are contrary to the directive of I.C. § 6–801. However, I.C. § 23–808(4) is a *statutory* bar to an action by an intoxicated person against the provider of alcohol. This distinction is fatal to appellants' argument. While appellants correctly point out that the Idaho legislature, in passing I.C. § 6–801, generally espoused the comparative negligence approach for negligence actions, this is not to say that the legislature is precluded from subsequently limiting, or even rejecting altogether, the application of comparative negligence in negligence actions arising out of particular circumstances.

This Court has previously upheld a statute enacted subsequent to I.C. § 6–801 which precludes recovery by a negligent skier against a ski area operator. *See Long v. Bogus Basin Recreational Assoc.*, 125 Idaho 230, 869 P.2d 230 (1994); *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 787 P.2d 1159 (1990). Section 6–1109 of the Idaho Code "provides that a skier *shall not recover* from a ski area operator if he violates any duty enumerated in I.C. § 6–1106 if such violation is causally related to his injury." *Long*, 125 Idaho at 232, 869 P.2d at 232 (emphasis added). In other words, if a skier negligently breaches one of his enumerated duties and that breach is causally related to his or her injury, that skier is precluded from recovering against the operator regardless of the operator's negligence, if any, and without the need to apportion fault. Thus, this Court has upheld a legislatively created exception to the abolition of contributory negligence as a complete bar to recovery.

We therefore hold that the Idaho legislature acted within its constitutional powers in

passing I.C. § 23–808. Accordingly, we reject appellants' argument that I.C. § 23–808(4) impermissibly revives the doctrine of contributory negligence.

### 3. I.C. § 23–808 does not violate Article I, § 7 of the Idaho Constitution.

Appellants argue that I.C. § 23–808 impermissibly infringes on the right to trial by jury guaranteed by Article I, § 7 of the Idaho Constitution. Article I, § 7 proclaims that "[t]he right of trial by jury shall remain inviolate." Idaho Const. art. I, § 7. The constitutional right of trial by jury has been interpreted to secure that right as it existed at common law when the Idaho Constitution was adopted. *See People v. Burnham,* 35 Idaho 522, 207 P. 589 (1922); *Christensen v. Hollingsworth,* 6 Idaho 87, 53 P. 211 (1898). However, the right of trial by jury is strictly enforceable only as to rights, remedies and actions triable by jury under the common law, and not necessarily as to new or different rights or remedies not in existence or in contemplation of the constitution when adopted. *See Brady v. Place,* 41 Idaho 747, 751, 242 P. 314, 315 (1925).

In this case, the claimed cause of action—alcohol provider liability for injury suffered by the intoxicated person to whom the alcohol was provided—did not exist at common law at the time the Idaho Constitution was adopted. Thus, the right to have a jury determine the merits of this cause of action did not exist then and therefore is not protected now by Article I, § 7 of the Idaho Constitution.

### B. The Trial Court Erred In Dismissing Coghlan's Claim Against The University Defendants.

The appellants appeal from the district court's order granting the University defendants' motion to dismiss pursuant to I.R.C.P. 12(b)(6). The district court held that the University had no duty to protect Coghlan from injuries sustained due to her own voluntary intoxication. The district court explained that establishing such a duty would

be contrary to the expressed legislative policy in Idaho. *See* I.C. § 23–808(4)(a).[2] The district court also held that no special relationship exists between the University and its students to give rise to an affirmative duty on the part of the University. The district court further held that the actions of the University in this case do not constitute acts sufficient to support a duty based on a voluntary assumption of duties.

### 1. Standard of review

The standard for reviewing a dismissal for failure to state a cause of action pursuant to I.R.C.P. 12(b)(6) is the same as the standard for reviewing a grant of summary judgment. *See Idaho Schs. For Equal Educ. v. Evans,* 123 Idaho 573, 578, 850 P.2d 724, 728 (1993); *Rim View Trout Co. v. Dep't. of Water Resources.,* 119 Idaho 676, 677, 809 P.2d 1155, 1156 (1991). The grant of a 12(b)(6) motion will be affirmed where there are no genuine issues of material fact and the case can be decided as a matter of law. *See Moss v. Mid–American Fire and Marine Ins. Co.,* 103 Idaho 298, 302, 647 P.2d 754, 758 (1982); *Eliopulos v. Idaho State Bank,* 129 Idaho 104, 107–08, 922 P.2d 401, 404–05 (Ct.App.1996). When reviewing an order of the district court dismissing a case pursuant to I.R.C.P. 12(b)(6), the non-moving party is entitled to have all inferences from the record and pleadings viewed in its favor, and only then may the question be asked whether a claim for relief has been stated. *See Idaho Schs. for Equal Educ.,* 123 Idaho at 578, 850 P.2d at 729; *Miles v. Idaho Power Co.,* 116 Idaho 635, 637, 778 P.2d 757, 759 (1989). "The issue is not whether the plaintiff will ultimately prevail, but whether the party 'is entitled to offer evidence to support the claims.'" *Orthman v. Idaho Power Co.,* 126 Idaho 960, 962, 895 P.2d 561, 563 (1995) (quoting *Greenfield v.. Suzuki Motor Co. Ltd.,* 776 F.Supp. 698, 701 (E.D.N.Y. 1991)).

The complaint filed by Coghlan includes a claim for relief based upon allega-

---

2. I.C. § 23–808(4)(a) provides: "[n]o claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or representatives."

tions of University negligence. A cause of action for negligence includes proof of: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *See West v. Sonke,* 132 Idaho 133, 142, 968 P.2d 228, 237 (1998) (citing *Brooks v. Logan,* 127 Idaho 484, 489, 903 P.2d 73, 78 (1995); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.,* 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991); *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980)). "When pleading a negligence cause of action, a detailed statement of the circumstances is not necessary, and a general allegation of negligence is sufficient." *Orthman,* 126 Idaho at 962, 895 P.2d at 563.

## 2. Duty of care

The district court granted the motion to dismiss based on its ruling that the University did not owe a duty to Coghlan who became intoxicated by consuming alcoholic beverages provided by third parties. This Court follows the rule that " 'one owes the duty to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.*'" *Doe v. Garcia,* 131 Idaho 578, 581, 961 P.2d 1181, 1184 (1998) (quoting *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980)) (emphasis in original). Further, there is a "general rule that each person has a duty of care to prevent unreasonable, foreseeable risks of harm to others." *Id.* (quoting *Sharp v. W.H. Moore, Inc.,* 118 Idaho 297, 300, 796 P.2d 506, 509 (1990)). This Court has previously identified several factors to consider in determining whether a duty arises in a particular situation:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and

consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rife v. Long,* 127 Idaho 841, 846, 908 P.2d 143, 148 (1995) (quoting *Isaacs v. Huntington Mem'l Hosp.,* 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653, 658 (1985)). *See also Turpen v. Pecha,* 133 Idaho 244, 985 P.2d 669 (1999).

There is ordinarily no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility. An affirmative duty to aid or protect arises only when a special relationship exists between the parties. *See* Restatement (Second) of Torts § 314A (1965). The college-student relationship is not listed in Restatement (Second) of Torts § 314A as one of the special relations giving rise to a duty to aid or protect, although the relations listed are not intended to be exclusive. *See* Restatement (Second) of Torts § 314A cmt. b (1965). Determining whether a special relationship existed between the University and Coghlan sufficient to impose a duty requires an evaluation of "the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." W. Prosser, Law of Torts 333 (3d ed.1964) (quoted in *Bradshaw v. Rawlings,* 612 F.2d 135, 138 (3d Cir.1979)).

The district court adopted the reasoning of *Bradshaw v. Rawlings,* 612 F.2d 135 (3d Cir.1979) and *Beach v. University of Utah,* 726 P.2d 413 (Utah 1986), in holding that no special relationship existed between the University and Coghlan in this case. In *Bradshaw,* the Third Circuit Court of Appeals held that there existed no special relationship between the college and a student imposing upon the college either a duty to control the conduct of the student operating a motor vehicle off campus or a duty to protect a student in traveling to and from a class picnic. The court declined to recognize a duty based on the observation that "[c]ollege students today are no longer minors; they are now regarded as adults in almost every

phase of community life." *Id.* at 139. This, combined with the recognition of the demise of the *in loco parentis* authoritarian role of modern college administrations, led the Third Circuit to conclude that the relationship between a college and its students is not sufficient to create a special relationship on which to predicate liability.

■■■■■ *Beach* involved an underage intoxicated university student who was injured when she fell off a cliff after wandering away from camp during a university-sponsored activity. The Utah Supreme Court in *Beach* cited to *Bradshaw* in finding that no special relationship existed between the university and its students in light of the adult status of modern college students and the diminished custodial role of modern universities. *See Beach,* 726 P.2d at 418–19. We agree that "the modern American college is not an insurer of the safety of its students." *Bradshaw,* 612 F.2d at 138. Accordingly, we decline to hold that Idaho universities have the kind of special relationship creating a duty to aid or protect adult students from the risks associated with the students' own voluntary intoxication.

### 3. Assumed duty

■■■■■ This Court has recognized that "it is possible to create a duty where one previously did not exist. If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Featherston v. Allstate Ins. Co.,* 125 Idaho 840, 843, 875 P.2d 937, 940 (1994) (citing *Bowling v. Jack B. Parson Cos.,* 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990)). Generally, the question whether a duty exists is a question of law. *See, e.g., Freeman v. Juker,* 119 Idaho 555, 808 P.2d 1300 (1991). In this case, appellants have alleged that two University employees were present to provide supervision at the BTP party attended by Coghlan. Appellants also have alleged that the University employees knew or should have known that BTP was serving intoxicating beverages to underage students and should have taken action at the time they were present in the BTP Fraternity house prior to Coghlan's injury. The appellants

further have alleged that the University employees knew or should have known that Coghlan was intoxicated and should have acted at the time they saw her prior to her injury. These allegations support an inference in favor of Coghlan that the University defendants assumed a duty to exercise reasonable care to safeguard the underage plaintiff from the criminal acts of third persons, *i.e.,* furnishing alcohol to underage students, of which the University employees had knowledge. Therefore, we hold that the pleadings in this case sufficiently state a claim for relief against the University defendants, and that the district court erred in granting the motion to dismiss at this stage of the proceedings. In so holding, we do not conclude as a matter of law that an assumed duty exists, and remand this issue for further litigation. Because of our holding, we do not find it necessary to discuss Coghlan's alternative theory of landowner liability for the University.

### C. The Trial Court Erred In Holding That Alpha Phi Sorority Owed No Duty To Coghlan.

Appellants challenge the district court's orders granting summary judgment in favor of Alpha Phi Sorority asserting that the district court erred in finding that Alpha Phi did not owe Coghlan any duty of care, that no special relationship existed between Alpha Phi and Coghlan, and that Alpha Phi did not assume a duty of care through its actions.

### 1. Standard of review

■■■■■ In an appeal from an order granting summary judgment, this Court applies the same standard of review as that used by the district court when originally ruling on the motion. *See Mitchell v. Bingham,* 130 Idaho 420, 422, 942 P.2d 544, 546 (1997). Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See id.* In an appeal from a summary judgment, this Court will determine: 1) whether there is a genuine issue as to any material fact, and 2) whether the moving party is entitled to judgment as a matter of law. This determination is to be based on the "pleadings, depositions, and admissions on file, together with the

affidavits, if any." *Id.* (quoting I.R.C.P. 56(c)). However, the Court should liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences from the evidence. *See id.*

In order to create a genuine issue of material fact, the party opposing the motion must present more than a conclusory assertion that an issue of fact exists. *See Van Velson Corp. v. Westwood Mall Assoc.,* 126 Idaho 401, 406, 884 P.2d 414, 419 (1994). "[R]ather, the plaintiff must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial." *Tuttle v. Sudenga Indus., Inc.,* 125 Idaho 145, 150, 868 P.2d 473, 478 (1994). However, "if a party moving for summary judgment raises issues in his motion but then fails to provide any evidence showing a lack of any genuine issue of material fact with respect to those issues, the nonmoving party has no burden to respond with supporting evidence." *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 531, 887 P.2d 1034, 1038 (1994) (citing *Thompson v. Pike,* 122 Idaho 690, 698, 838 P.2d 293, 301 (1992). Further, summary judgment is appropriate where the non-moving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. *See Harris v. Dep't of Health and Welfare,* 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992).

### 2. Duty of care

While appellants properly point out that "[e]very person has the general duty to use due or ordinary care not to injure others, to avoid injury to others ... and to do his work, render services or use his property as to avoid such injury," *Harper v. Hoffman,* 95 Idaho 933, 935, 523 P.2d 536, 538 (1974), this case does not involve an allegation that Alpha Phi Sorority members affirmatively injured Coghlan. In order to find the existence of a duty of care, the appellants must show that Coghlan had a special relationship with Alpha Phi which obligated the sorority to protect her as an underage student from injuries resulting from her voluntary intoxication. *See* Restatement (Second) of Torts § 314(A) (1964) (stating that an affirmative duty to act may arise only when a special relationship exists between the parties). These relation-

ships generally arise only when one assumes responsibility for another's safety or deprives another of his or her normal opportunities for self-protection. *See id.* at § 314(A)(4).

Examples of the types of "special relationships" contemplated by § 314(A) of the Restatement (Second) of Torts which give rise to a duty to aid or protect include duties owed by: 1) a common carrier to its passengers; 2) an innkeeper to his guests; 3) a possessor of land who holds his land open to members of the public who enter upon the land in response to his invitation; and 4) one who takes custody of another. *Id. But see Turpen v. Pecha,* 133 Idaho 244, 985 P.2d 669 (1999) (no duty owed by landlord to guest of tenant who comes on rental premises to engage in legal activities.) Appellants argue that the relationship between Alpha Phi Sorority and Coghlan is the type of relationship which gives rise to a duty to aid or protect. It is true that Alpha Phi had a level of control over the behavior of Coghlan similar to the University. Like the University, Alpha Phi had a policy against underage drinking and exercised some influence over the behavior of sorority residents. However, as discussed above, society no longer expects universities to monitor the drinking activities of eighteen-year-old college students. *See, e.g., Ballou v. Sigma Nu General Fraternity,* 291 S.C. 140, 352 S.E.2d 488 (S.C.Ct.App. 1986); *Millard v. Osborne,* 416 Pa.Super. 475, 611 A.2d 715 (1992); *Hughes v. Beta Upsilon Building Assoc.,* 619 A.2d 525 (Me. 1993); *Bell v. Alpha Tau Omega Fraternity,* 98 Nev. 109, 642 P.2d 161 (1982). Therefore, the district court correctly concluded that Alpha Phi's limited influence over Coghlan did not constitute a special relationship sufficient to create an affirmative duty for Alpha Phi to aid or protect Coghlan from injuries resulting from her voluntary intoxication.

### 3. Assumed duty

Appellants argue that Alpha Phi assumed a duty which renders it liable to Coghlan for her injuries. As discussed above, "[i]f one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Featherston v. Allstate Insurance Co.,* 125 Idaho 840, 843, 875 P.2d 937, 940 (1994). Appellants argue that Alpha

Phi took numerous actions which fairly constitute undertakings sufficient to create a duty to act in a non-negligent manner. Appellants assert that selecting Coghlan as a sorority pledge and inviting her to attend the fraternity parties with knowledge that alcohol would be served there and encouraging her to drink was a sufficient undertaking to create a duty for Alpha Phi to supervise and protect Coghlan. The appellants also argue that Alpha Phi's assignment of a "guardian angel" to supervise Coghlan during the fraternity parties was a sufficient undertaking to create an affirmative duty which was breached when the assigned guardian angel left Coghlan to attend the parties on her own. Finally, appellants contend that Alpha Phi, in voluntarily taking Coghlan back to the sorority house and putting her to bed on the third floor in her intoxicated state, undertook a duty to supervise and protect her until she was no longer in danger of physical harm due to her intoxication.

Liberally construed, the record supports inferences that Alpha Phi invited newly selected sorority members to attend various fraternity parties and knew or should have known that alcohol would be served to underage newly selected sorority members at the parties. The record also demonstrates that Alpha Phi appointed a "guardian angel" sorority member to accompany and assist Coghlan during the activities on the date of Coghlan's injuries. Further, the record supports the inference that Alpha Phi undertook to care for Coghlan after she became intoxicated by taking her back to the Alpha Phi Sorority house and leaving her in bed unattended in the third floor sleeping area of the house. After construing the facts in favor of Coghlan, we find that a material issue of fact exists as to whether the Alpha Phi Sorority voluntarily assumed a duty of reasonable care to supervise and protect Coghlan until she was out of danger of harm due to her intoxication. Therefore, the district court erred in granting summary judgment in favor of Alpha Phi Sorority.

## IV.

## CONCLUSION

The orders granting summary judgment in favor of the BTP, SAE, and PKA Fraternities are affirmed. The orders dismissing Coghlan's complaint against the University of Idaho and Idaho State Board of Education and the Alpha Phi Sorority are vacated, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to BTP, SAE, and PKA Fraternities. No attorney fees or costs are awarded to Coghlan, the University defendants or the Alpha Phi Sorority.

Chief Justice TROUT, Justices SCHROEDER and KIDWELL, concur.

Justice WALTERS dissents to Part III.B.3., without writing.