89 P.3d 863

NAMPA CHARTER SCHOOL, INC., Plaintiff–Appellant– Cross Respondent,

v.

Conrad and Ersilia DELAPAZ, husband and wife, Defendants–Respondents– Cross Appellants.

No. 29451.

Supreme Court of Idaho, Boise, February 2004 Term.

April 23, 2004.

Lynch & Associates, Boise, for appellants. James B. Lynch argued.

Eberle, Berlin Kading, Turnbow & McKlveen, Chtd., Boise, for respondent. Warren E. Jones argued.

TROUT, Chief Justice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Nampa Charter School, Inc., (NCS), is a charter school organized under I.C. § 33–

5200, the Public Charter School Act of 1998, and is governed by the Board of Trustees of Nampa School District No. 131 (NSD # 131).

NCS hired Ersilia DeLaPaz (DeLaPaz) and assigned her bookkeeping and receptionist duties. DeLaPaz enrolled her child, who suffers from Down's syndrome, in NCS's special education program. After DeLaPaz had been employed by NCS for a few months, School Administrator Rebecca Stallcop (Stallcop) began to feel DeLaPaz was not performing her job properly and repeatedly insisted DeLaPaz improve her performance. In response, according to NCS, DeLaPaz attempted to discredit Stallcop and the special education program by making a series of complaints. Among the statements allegedly made by DeLaPaz were that Stallcop was unhappy with the performance of many teachers and that Stallcop intended to leave NCS, taking four teachers from NCS with her to a new charter school. NCS also claims DeLaPaz informed a parent she had information that would "take the charter down." NCS further contends DeLaPaz made false statements concerning the honesty, integrity, and competence of Stallcop, implied Stallcop engaged in illegal behavior, and commented the teachers were "mean to the students." Finally, NCS contends that in April 2001, DeLaPaz approached a teacher monitoring a class and falsely accused Stallcop of misusing grant money.

NCS terminated DeLaPaz's employment on April 30, 2001, for refusing to follow directions and demonstrating she was not willing or competent to perform her bookkeeping tasks. Shortly thereafter, DeLaPaz filed a complaint with the Department of Education, asserting several deficiencies in the services received by her child. Following an investigation by the Department of Education, NCS agreed to implement some corrective measures.

In September and October of 2001, an NCS special education teacher began to maintain and send notebooks home to DeLaPaz pertaining to the interaction with and assistance rendered to DeLaPaz's child, together with a number of written letters inviting DeLaPaz to meet and discuss the special education program and to set up an individual education plan for DeLaPaz's child. According to NCS, DeLaPaz resisted or ignored the letters and made harassing telephone calls to teachers in response. During this period, DeLaPaz sent five letters to NCS criticizing the special education program and administrators, and sent copies of the letters to members of the Board and certain NSD # 131 employees.

On January 10, 2002, DeLaPaz filed a complaint with the Department of Education asserting NCS violated her right to privacy. The Department of Education rejected this complaint. On June 13, 2002, DeLaPaz filed a complaint with the U.S. Department of Education Office for Civil Rights alleging discrimination and retaliation, which apparently remains unresolved.

NCS filed a complaint against DeLaPaz and her husband September 13, 2002, alleging DeLaPaz used her "child's participation in the special education program in a manner which is calculated to accomplish the often stated purpose of DeLaPaz to 'bring down' [NCS]." NCS claimed DeLaPaz's actions caused "serious and unnecessary disruption of the legitimate affairs of [NCS]" and a financial loss in excess of $10,000. Attached to the complaint were letters DeLaPaz had sent to members of the Board, NSD # 131, and NCS. NCS asserts these letters amount to libel and slander because they contain intentionally false statements calculated by DeLaPaz to induce NSD # 131 to revoke or fail to renew NCS's charter. NCS requested an injunction under Rule 65 of the Idaho Rules of Civil Procedure, barring DeLaPaz from making any further false statements concerning NCS and Stallcop and preventing DeLaPaz from sending copies of her letters to the Board and NSD # 131. Further, NCS alleged DeLaPaz tortiously interfered with NCS's responsibilities to fulfill its legislative mandate.

DeLaPaz filed a motion to dismiss for failure to state a claim pursuant to I.R.C.P. 12(b)(6). In response, NCS filed an affidavit in opposition to defendants' motion to dismiss. The district judge held a hearing on the motion and considered only the complaint, refusing to consider the affidavit on the basis that the motion required only an

examination of the pleadings. Thereafter the district judge issued a decision and order finding that NCS is a governmental entity and therefore, cannot maintain an action for libel and slander against an individual. Further, the district judge determined that NCS failed to provide any Idaho statute or case law supporting a cause of action in tort for interference with an entity's responsibilities under state statutes. As a result, the district court granted DeLaPaz's 12(b)(6) motion and dismissed NCS's claims with prejudice.

DeLaPaz then filed a motion for attorney fees under I.C. §§ 12–117, 12–121, and 12–123, and I.R.C.P. 11 and 54(d). The district judge issued an order denying most of the attorney fees requested by DeLaPaz, but noted that the cause of action for tortious interference was frivolous and warranted attorney fees under I.C. §§ 12–121 and 12–123. The court awarded DeLaPaz 20% of the attorney fees requested together with costs.

NCS filed a timely notice of appeal and DeLaPaz cross-appealed the attorney fee order.

## II. STANDARD OF REVIEW

In *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 67, 28 P.3d 1006, 1010 (2001), we stated the standard of review relevant to this case:

> The Court's standard of review for an order of the district court dismissing a case pursuant to I.R.C.P. 12(b)(6) is the same as the summary judgment standard of review. See *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 398, 987 P.2d 300, 310 (1999); see also *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated. *Coghlan*, 133 Idaho at 398, 987 P.2d at 310. "The issue is not whether the plaintiff will ultimately prevail, but whether the party is 'entitled to offer evidence to support the claims.'" Id., citing *Orthman*, 126 Idaho at 962, 895 P.2d at 563, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974).

## III. DISCUSSION

### A. The district court did not abuse its discretion by treating DeLaPaz's motion as a 12(b)(6) motion.

■ At the hearing on the motion to dismiss, NCS argued the district judge should treat DeLaPaz's 12(b)(6) motion as a motion for summary judgment and allow the parties to engage in discovery before considering the motion. Specifically, NCS argued that a conflict existed as to whether DeLaPaz's letters and statements amounted to constitutionally protected free speech and asked the district court to consider an affidavit. The district judge refused to consider the affidavit and instead, looked only to the pleadings to determine whether under Rule 12(b)(6), the complaint presented any valid claims for relief. On appeal to this Court, NCS again argues the trial court should have treated the 12(b)(6) motion as a motion for summary judgment, but fails to explain why, other than to argue for more time to conduct discovery.

> I.R.C.P. 12(b) provides:
> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

In this case, however, the district judge did not consider any matters outside the complaint and specifically refused to consider the affidavit filed by NCS because the district court considered this only as a motion to dismiss based on the pleadings. Given the nature of the motion filed before the district court, we find no error in the judge's determination that this motion should be resolved solely on the pleadings presented. As discussed below, NCS alleged no valid claim for relief and it was not necessary to prolong this case by permitting discovery in a situation where no claim had been stated.

### B. The district judge properly granted DeLaPaz's 12(b)(6) motion to dismiss.

The district judge dismissed NCS's libel and slander claim for failure to state a claim

under I.R.C.P. 12(b)(6) because, as a matter of law, a governmental entity cannot maintain a libel and slander claim against a person whose speech is protected as it relates to a matter of public concern [1].

### 1. Injunctive relief.

■ In its complaint, NCS requested an injunction "compelling [DeLaPaz] to refrain from making any other unfounded false statements about [Stallcop], and its teachers and administrators," and an injunction "preventing [DeLaPaz] from sending copies of correspondence to Bob Henry or other members of the [Board] of [NSD #131] which contain false, fraudulent misstatements." The district judge found DeLaPaz's letters and statements concerned a public issue and NCS could not obtain an injunction against DeLaPaz because it would be an impermissible prior restraint on speech.

In *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the United States Supreme Court held that an injunction on speech critical of a public official is an impermissible prior restraint. In *Near*, the state of Minnesota commenced a statutory nuisance abatement action against Near and his newspaper, alleging statements in the paper to be "malicious, scandalous and defamatory." *Id.* The trial court found that the defendants did regularly publish a malicious, scandalous and defamatory newspaper, and it was therefore subject to abatement as a nuisance. The trial court also perpetually enjoined the defendants "from producing, editing, publishing, circulating, having in their possession, selling or giving away any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law." *Id.* at 706, 51 S.Ct. at 627, 75 L.Ed. at 1362. On appeal, the Supreme Court held that such an injunction constituted an impermissible prior restraint because the newspaper contained speech critical of public officials and the object of the Minnesota statute

was to suppress the offending newspaper and to censor the offending publisher.

Similarly, DeLaPaz wrote letters to NCS, the Board and NSD #131 criticizing the manner in which officials at NCS performed their duties. Like the permanent injunction in *Near*, an injunction in this case preventing DeLaPaz from writing letters to NCS, the Board, or NSD #131 in the future would be an impermissible prior restraint on speech that is critical of public officials. The district judge was correct that, to the extent NCS requested a prior restraint on DeLaPaz's speech, no proper claim for relief has been stated.

### 2. Claim for relief asserting damages

■ NCS also asserts a claim for damages arising out of its allegations of libel and slander against DeLaPaz. Although NCS argued it is a non-profit corporation under I.C. § 30-3-24 and consequently, it "has the same powers as an individual ... 1) to sue and be sued, complain and defend in its corporate name," the district judge determined NCS is a governmental entity that cannot maintain an action for libel against an individual when that individual is speaking on an issue of public concern. The district judge relied on *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), in which the U.S. Supreme Court held that a generalized criticism of government policy cannot be punished. The Supreme Court stated that "no court of last resort in this country has ever held, or even suggested that prosecutions for libel on government have any place in the American system of jurisprudence." *Id.* at 291, 84 S.Ct. at 732, 11 L.Ed.2d at 713. Further, in *Rosenblatt*, the U.S. Supreme Court rejected "the specter of prosecutions for libel on government, which the Constitution does not tolerate in any form." 383 U.S. at 81, 86 S.Ct. at 673, 15 L.Ed.2d at 603. Similarly, in *Weeks v. M–P Publications*,

---

1. NCS makes extensive factual allegations against DeLaPaz in the complaint, some of which could, in theory, support other causes of action. The only two claims for relief specifically articulated, however, are claims for libel and slander and tortious interference with statutory responsibilities. Those are the only two claims addressed by the district judge or by this Court on appeal and we express no opinion about whether the facts alleged could have constituted some other valid claim for relief.

*Inc.,* 95 Idaho 634, 516 P.2d 193 (1973) this Court stated that "political freedom ends when the government can use the courts to silence, chill, or to dampen the vigor of public debate." *Id.* at 639, 516 P.2d at 198.

The district judge then looked to the Public Charter Schools Act of 1998 in determining that NCA is a governmental entity, at least within the context of this case. That Act provides that public charter schools "operate within the existing public school system" (I.C. § 33–5202) and "charter schools shall be part of the state's program of public education." (I.C. § 33–5203). Moreover, the "board of directors of a charter school shall be deemed public agents" and "a charter school shall be considered a public school for all purposes." (I.C. § 33–5204). I.C. § 33–5204(2) clearly states that *"a charter school may sue or be sued ... to the same extent and on the same conditions as a public school district,* and its employees, directors and officers shall enjoy the same immunities as employees, directors, and officers of public school districts and other public schools." (emphasis added). While I.C. § 33–5204(1) provides that "[A] charter school shall be organized and managed under the Idaho nonprofit corporation act ...," NCS nevertheless is governed by the charter school provisions and those specific provisions control over any general statutes applicable to nonprofit corporations. *City of Sandpoint v. Sandpoint Independent Highway District,* 126 Idaho 145, 149, 879 P.2d 1078, 1082 (1994)(When there are specific statutes addressing an issue, those statutes control over more general statutes.); *Christensen v. West,* 92 Idaho 87, 437 P.2d 359 (1968).

■ For the purposes of this libel and slander action against DeLaPaz, NCS should be treated similarly to a school district and is a governmental entity in terms of its ability to sue or be sued. Under *Sullivan, Rosenblatt,* and *Weeks,* the school cannot maintain an action for libel and slander against an individual when that individual is speaking out on an issue of public concern. DeLaPaz's letters and criticisms, which addressed the manner in which officials at NCS performed their duties and NCS's policies and programs, are clearly an expression of her opinion on a matter of public concern. As a result, we find that NCS cannot maintain an action for damages for libel and slander against DeLaPaz and the district judge properly granted DeLaPaz's 12(b)(6) motion for failure to state a claim.

## C. The district court properly dismissed NCS's "tortious interference with responsibilities under state statute."

■ NCS alleged in its complaint that it is entitled to a permanent injunction prohibiting DeLaPaz from interfering with the "mission of [NCS] to fulfill the mandate of the parents who formed the NCS under the statutes of the Legislature." NCS further alleged DeLaPaz's past letters and statements amounted to tortious interference with NCS's responsibilities under the Public Charter Schools Act. The district judge determined that any interference with NCS's responsibilities "would be subject to the same constitutional impediments discussed above." Essentially, the district judge determined that any injunction prohibiting DeLaPaz from writing letters and making statements would be unconstitutional.

Further, the district judge noted that NCS failed to provide "any authority under the common law, Idaho statutes, or Idaho law supporting a cause of action in tort for interference with a person or entity's responsibilities." The district judge was correct in finding no basis for NCS's allegation that DeLaPaz tortiously interfered with NCS's responsibilities under the Public Charter Schools Act. It is a non-existent cause of action and unsupported by the common law, Idaho statutes, or Idaho case law. Because NCS failed to state a claim upon which relief can be granted, we affirm the decision of the district court granting DeLaPaz's 12(b)(6) motion to dismiss.

On appeal, NCS raises a number of other issues, but they are not supported by any argument or authority and, therefore, we decline to address them. *State v. Zichko,* 129, Idaho 259, 923 P.2d 966 (1996)("When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered.")

**D. The district court did not abuse its discretion in the award of attorney fees to DeLaPaz.**

 DeLaPaz requested attorney fees under I.C. §§ 12–117, 12–121, and 12–123 and I.R.C.P. 11. The district judge denied DeLaPaz attorney fees under I.C. § 12–117 because NCS is not a taxing district and denied fees under I.R.C.P. 11 because no abuse or misconduct occurred. The trial court then noted NCS's suit consisted of two causes of action; one for libel and slander and the other for tortious interference with statutory responsibilities. Because the issue of whether NCS could maintain a cause of action for libel and slander was an issue of first impression, the district judge found this was not a frivolous claim. However, the district judge held the cause of action for tortious interference was frivolous and did merit an award of attorney fees under I.C. § 12–121. The district court awarded 20% of the attorney fees requested.

DeLaPaz first argues the district judge should have awarded attorney fees under I.C. § 12–117(1) because NCS is a taxing district. I.C. § 12–117(1) provides in part:

in any ... civil judicial proceeding involving as adverse parties a ... taxing district and a person, the court shall award the person reasonable attorney fees ... if the court finds in favor of the person and also finds that the ... taxing district acted without a reasonable basis in fact or law.

While a school district is a taxing district within the meaning of I.C. § 12–117, *See Daw ex rel Daw v. School District 91 Board of Trustees*, 136 Idaho 806, 807, 41 P.3d 234, 236 (2001), I.C. § 33–5206(1) specifically provides that "... a charter school ... shall not ... levy taxes". Thus, while NCS is a charter school and part of NSD # 131, it is not a taxing district and the district judge did not err in refusing to award DeLaPaz attorney fees under I.C. § 12–117(1).

 Next, DeLaPaz argues she is entitled to the full amount of attorney fees under I.C. § 12–121 because this case was pursued frivolously, unreasonably or without foundation. The award of attorney fees rests in the discretion of the court. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). To determine whether the district court abused its discretion, this Court considers: (1) whether the district court correctly perceived the issue as one of discretion; (2) whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

The trial court did not abuse its discretion because the issue of whether NCS can maintain an action for libel and slander is a debatable issue. The district judge had broad discretion to apportion the attorney fees DeLaPaz claimed, and no abuse of that discretion occurred.

Finally, DeLaPaz claims she was entitled to attorney fees below under I.R.C.P. 11. Rule 11 provides:

The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

If a pleading is signed in violation of Rule 11, the district court "*shall* impose upon the counsel or represented party an appropriate sanction, which may include attorney fees."

The district judge in this case declined to award DeLaPaz attorney fees under this provision, finding the rule is limited to abuses of discovery and misconduct and is not intended as a compensatory tool. As we stated in *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 96, 803 P.2d 993, 1002 (1991), "the reasons for which attorney fees may be awarded pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1) are not reasons that will support an award of sanctions pursuant to I.R.C.P. 11(a)." Thus, while NCS's claims are frivolous in part for the purposes of I.C. § 12–121, the district judge correctly determined this was not misconduct under Rule 11 because NCS presented a good faith argu-

ment that NCS is not a public entity and conducted a reasonable inquiry into the supporting facts. Therefore, we find no abuse of discretion in denying DeLaPaz attorney fees under Rule 11.

### E. DeLaPaz is not entitled to attorney fees on appeal.

DeLaPaz argues she is entitled to attorney fees on appeal, claiming that NCS's appeal is frivolous, unreasonable or without foundation. There are meritorious issues presented by this appeal and we decline to award fees against NCS.

## IV. CONCLUSION

We affirm the decision of the district judge granting the motion to dismiss for failure of the complaint in this case to state any claim for relief. We uphold the award of attorney fees below but decline to award fees on appeal. We award costs on appeal to DeLaPaz.

Justices SCHROEDER, KIDWELL, EISMANN and BURDICK concur.