## P. J. COCKBURN  v.  UNION BANK OF LOUISIANA.

A stockholder in a corporation has a right to access to the proper sources of knowledge to know how
the affairs of the corporation are conducted. If his rights are not restricted, in that respect, by their
charter or rules and by-laws passed in conformity thereto, a stockholder in a Banking Company has
a right to the inspection of the " discount book" of the Bank, within proper and reasonable hours.

If the right is denied a *mandamus* is the proper remedy.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.
*Semmes & Labatt,* for plaintiff and appellant.  *Benjamin, Bradford & Finney,* for defendant.

COLE, J.  This is a petition by the plaintiff, as a stockholder of the *Union
Bank,* for a *mandamus* to compel the officers thereof to allow him the right of inspecting the " discount book" of the bank, within proper and reasonable hours,
which right had been denied him on due demand.

Petitioner alleges, that he is a citizen of the State and the owner of one hundred and ten shares of the capital stock of the bank, which is established under
the Free Banking laws of this State ; that for purposes "material to the interests
of himself and other stockholders, and also the interests of said banking company,
and of the public, he is desirous of examining the discount book of said banking
company ; that among other objects in view, he is desirous of ascertaining, by an
examination of said book, to whom and in what manner loans or discounts have
been made by said banking company, and on what security or endorsements, and
whether said loans and discounts have been made in conformity to, or in violation
of the free banking law of this State, or the rules and by-laws of said banking
company."

The amended petition avers, " that petitioner, as a stockholder of the bank, has,
in common with the other stockholders, a right of property in the books of the
bank, and that all the stockholders of said bank are legally entitled to inspect the
books thereof, and the refusal to permit petitioner, or any other stockholder, to
inspect said discount book, may not only endanger the interests of the public, but
also the interests of petitioner as a stockholder, as well as those of all other stockholders ; the enjoyment of said right being necessary to enable petitioner, and
other stockholders, to prevent mismanagement on the part of the directors and
officers of the bank, and to correct any act of mismanagement by a removal of
the director or directors guilty of mismanagement at any ensuing election."

The defendant filed an exception that the petition disclosed no cause of action,
nor legal ground for the issue of a mandamus.  This exception was sustained by
the Judge *a quo,* and the rule taken by petitioner was discharged with costs.

We will examine the case at bar in three points of view :

1.  Has petitioner a sufficient interest to justify his action ?
2.  Has he the general right which he claims ?
3.  Can this right, if he has it, be enforced by *mandamus* ?

1.  It is evidently his interest, as a stockholder, to have the business of the
bank properly conducted.  If loans are made on an insecure basis, or on securities
reprobated by law, his interests will eventually suffer.  It is impossible for him to
allege that his interests have already been affected injuriously, because he has been
deprived of the source of this knowledge.

37

2. Has he the general right which is demanded? Defendant avers, that by the charter of the Union Bank, and the laws applicable thereto, the entire management of its affairs and the control of its books and property are confided to a board of directors, who administer the same, and have the right of deciding when, by whom and for what purpose the said books shall be inspected, except in cases specially provided for by law, and that petitioner has in law no right to demand at his pleasure the inspection of the books specially referred to and designated in his petition as the discount book of said bank. If the board of directors have the exclusive right alleged to exist in them, they must derive the power and prerogative from the Free Banking laws of the State, or the charter or notarial act containing the agreement by which this bank was created, or from the rules and by-laws of the bank ; defendant has not, however, called our attention to any Act of the Legislature, to any part of the charter of the bank or to any of its rules or by-laws which confer such exclusive authority upon the board of directors, and we are not aware of the grant of any such prerogative exclusively to the board of directors.

A stockholder in a corporation possesses all his individual rights, except so far as he is deprived of them by the charter or the law of the land ; as long then as the charter or the rules and by-laws, passed in conformity thereto, and the law, do not restrict his individual rights, he possesses them in full and can demand to exercise them. It cannot be denied that it is the right of every one to see that his property is well managed and to have access to the proper sources of knowledge in this respect.

According to our present laws, any number of individuals, by following certain regulations prescribed by statute, can organize themselves into a corporation ; if they were not incorporated, they would be partners *inter-se*, and as such enjoy all the rights of partners. It must be granted that every partner has the right to inspect the books of the partnership, and the mere fact of incorporation cannot destroy that right, unless it is taken away by some provision of the charter, or some law or by-law of the corporation.

In the case of *Purton* v. *The Carrolton Railroad*, 3 An. 30, the court says that, " Corporations are to be treated with reference to the objects of their creation and to the express powers with which the Legislature may have invested them ; *to that extent* the general law of partnership is superseded by the charter." Again, in the same case, " The extent of the power given to corporations in authorizing them to make by-laws, is not accurately defined, but the effect of the power, when properly exercised, is that stockholders are bound by a set of provisions and rules beyond those actually contained in the charter, and as far as they extend, they also supersede the general law of partnership."

The right claimed does not clash with the objects for which the bank was created. The unseasonable and unusual exercise of the right might be inconvenient and troublesome, but that abuse might be remedied by proper by-laws. It is urged that the Act of the Legislature, approved 24th February, 1842, which declares that it shall be lawful for any stockholder, at any time during business hours, to examine and take copies from the *stock ledger* of any bank, etc., confines the right of a stockholder to an examination of the stock ledger alone ; on the principle of *expressio unius est exclusio alterius*. This law was passed in February, 1842, previously to the decision in the case of *Hatch* v. *The City Bank of New Orleans*, which took place in March, 1842, but subsequently to the decision of Judge Watts, in the court below. It was evidently enacted with relation to

that controversy, and merely declared the will of the Legislature on the point in that case, which was the right of inspecting the stock ledger. If the Legislature had granted the right to the stockholders " at any time during business hours " to examine any other books of the bank, it might have interfered with the right of the bank to prescribe rules on the subject, and such unrestricted right of examination would, probably, be productive of inconvenience.

The principle " *expressio unius est exclusio alterius,*" cannot be applied when a party already enjoys by law a right; for in such a case the exercise of the right must be prohibited by the repeal of the law granting it.

That principle applies often when there is no law granting a certain privilege; then a special statute conferring particular powers may be deemed an exclusion of all others. As in the case at bar, the stockholder has the right claimed; the declaration by the Legislature that he has another and distinct right does not deprive him of that which is accorded by other laws.

3. Can this right be enforced by *mandamus?* It is not sufficient to deprive petitioner of this remedy, because he may have another specific legal remedy, viz : a suit for damages. A suit of this character might last for a long time and petitioner suffer great loss by being debarred from an examination of the discount books. Judge Martin, in the case of Hatch, says : " There is not any difference, in my opinion, between a case in which no remedy is provided, and that in which the remedy is absolutely useless or extremely inadequate. The right claimed is of such a nature that, to be of any value, it must be promptly enforced. It is not susceptible of any but the most capricious measure of damages. The slowness of legal forms, if any other remedy than the writ of *mandamus* were resorted to, is such that the public good would suffer from the delay. The provisions of our law, in this respect, are in accordance with those of the common law, which the counsel for the appellants has invoked. It is laid down by Lord Mansfield, that in order to exclude the writ of *mandamus*, remedy by other means must be adequate, or must afford specific, or what in the case is equivalent to specific relief. Damages cannot be said to be specific relief, for the refusal of leave to inspect books."

We are of opinion that a *mandamus* is the proper remedy in the present case. If petitioner has the right of examining the discount books, he cannot be deprived of this right by the substitution of damages. He does not ask for damages, but for the exercise of a right. If he has the right, he ought to have the exercise of it as soon as possible; for the deprivation of his right cannot, perhaps, be accurately estimated in damages. It may be many years before the amount of the damage can be known. In ordinary cases it would not be a sufficient reason for a *mandamus* that the party could obtain thereby a quicker remedy for his wrong, because his damages can be well ascertained, but in the case at bar the loss that may result from the non-examination of the discount books cannot be accurately nor soon known.

The case of *Hatch* v. *The City Bank,* 1 R. 470, cannot be considered as a decisive authority against our view of the case, because it was the opinion of two judges and not of the majority of the court; Judge Simon was absent from ill health ; Morphy, J., being interested, did not sit on the trial of the case, and Judge Martin dissented; so that the opinion was that of but two judges, Garland and Bullard. Vide Wordsworth on Joint Stock Companies, p. 86-7; Collyer on Part. p. 115 and 644; 5 Mason, 176 ; *Bacon* v. *Robertson,* 18 How. S. C. U. S. R. 483 ; C. C. 437 ; 1 Blackstone Com. 472 ; *Smith* v. *McMicken,* 3 An. 322 ;

*Bank of Mobile* v. *Harris*, 5 An. 538; C. C. 426, 427; 3 Burrow R. p. 1265; Bisset on Partnership, p. 289; 10 Wend. 393; 12 Wend, 183; 9 La. 329; *Kendall* v. *The United States*, 12 Pet. p. 615; Sessions Acts of 1855.

It is objected that the interests of the public in the faithful administration of the bank are protected by the Board of Currency and Committees of the Legislature. These do not, however, deprive petitioner of the privilege of supervising his own interests; he is not bound to depend on the fidelity of public agents for the protection of his rights.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed; that the exception be overruled; that this cause be remanded to be tried on its merits, and that appellee pay the costs of appeal.