793 P.2d 703

**Shirley BOWLING, individually and as personal representative of the estate of Carl Ruthford Bowling, deceased, Plaintiff–Appellant,**

v.

**JACK B. PARSON COMPANIES, a Utah Corporation, Defendant–Respondent.**

No. 17893.

Supreme Court of Idaho.

June 1, 1990.

McDermott, Zollinger, Box & Olley, Pocatello, for plaintiff-appellant. Keith A. Zollinger argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-respondent. John R. Goodell argued.

McDEVITT, Justice.

This action is brought on behalf of the surviving family of Carl Bowling, who was killed in the course of his employment with Bannock Paving Company. Bannock Paving is a wholly owned subsidiary of Parson Companies. The two corporations have interlocking directorates and management.

Bowling was killed on October 16, 1986 when he was crushed by a truck operated by a fellow employee. The truck was being driven in reverse without an audible reverse warning device or an observer, in violation of OSHA safety regulations. Before the trial court the plaintiff argued that Parson Companies, through its risk manager, Dave Langrock, had undertaken to implement and supervise a program for the safe maintenance of Bannock Paving's equipment, including inspections of the premises and equipment of Bannock Paving, and had done so negligently, proximately causing Bowling's death.

The theory asserted by the plaintiff is set forth in the Restatement of Torts 2d § 324A, which creates liability if one undertakes to render services which should be recognized as necessary to the safety of a third person, where the failure to exercise reasonable care in performing the services increases the risk or harm, or the person rendering the services has undertaken to perform a duty owed by the other to the third person, or where the harm is suffered due to reliance upon the performance of the undertaking.

Dave Langrock is employed by Parson Companies as a risk manager for Parson Companies and its subsidiaries. His duties include accident investigation, safety inspections, compliance with OSHA regulations and coordination of insurance coverage. Bannock Paving has also employed its own safety officer since 1980. Since that time, Langrock has had no responsibil-

ity for safety operations at Bannock. He stated in his deposition that although it was in his power to make recommendations to management concerning unsafe conditions at Bannock, it was not a part of normal procedure. He stated that any such recommendations on his part to Bannock or Parson Companies would carry no more authority than if they came from a third party representing an insurance company.

Between 1974 and 1980, Langrock inspected the Bannock Paving premises every one or two months. In 1984 the frequency of his inspections was reduced. He stated in his deposition that after 1984, "I would just periodically come up and do a walk-around just to look at the buildings and equipment and ask the office manager with regards to any new pieces of equipment or deletions, and also with regards to upgrading the insurance on buildings and equipment...." The evidence before the trial court included three written reports on inspections of Bannock Paving by Langrock. These identified 13 separate pieces of equipment which did not have operational audible reverse warning signals.

There was deposition testimony from Mike Wood, the President of Bannock Paving, and Executive Vice–President of Parson Companies, stating that Parson Companies did not assume the safety program at Bannock Paving, but that Bannock Paving operated and enforced its own safety program.

The district court granted summary judgment to the defendant because the plaintiff failed to make a showing on the following elements under § 324A: 1) that the actions of Parson Companies were undertaken with the primary and unambiguous purpose of benefitting either Bannock Paving or its employees; 2) that Parson Companies affirmatively acted to increase the risk of harm, and that failure to abate an existing risk (nonfeasance) was not sufficient; 3) that Parson Companies' actions supplanted and not merely supplemented Bannock Paving's duty to provide a safe work place as required by § 324A(b); and

4) that either Bannock Paving or the decedent was induced to forego other remedies or precautions in order to establish reliance on the acts of Parson Companies.

On appeal the parties direct the bulk of their arguments to the question of type of proof required to fulfil the elements of a § 324A claim. However, without adopting the district court's interpretation of the Restatement of Torts, our analysis focuses upon the district court's determination that Parson Companies was entitled to a summary judgment based on the threshold issue of whether there was any undertaking at all. On that basis we hold that Parson Companies owed no duty to the employees of Bannock Paving.

■ No liability arises from the law of torts unless the defendant owes a duty to the plaintiff. *Hoffman v. Simplot Aviation*, 97 Idaho 32, 539 P.2d 584 (1975). The mere fact of a parent subsidiary relationship does not impose a duty on the parent on behalf of the subsidiary or its employees. *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 761 P.2d 1169 (1988); *Fletcher v. Martin Electronics, Inc.*, 825 F.2d 301 (11th Cir.1987); *Love v. Flour Mills of America*, 647 F.2d 1058 (10th Cir.1981); *Walker v. Newgent*, 583 F.2d 163 (5th Cir.1978); *cert. denied* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979) (under Texas law, 100% stock ownership by parent corporation does not create agency relationship or make the subsidiary an alter ego of the parent).

■ It is, of course, possible to create a duty where one previously did not exist. If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner. Keeton, *Prosser and Keeton on the Law of Torts*, § 56 pp. 380–81 (5th ed.1984). Yet such liability may only come into being to the extent that there is in fact an initial undertaking.

In this case, Langrock's function in relation to Bannock Paving was to periodically inspect the premises. Parson Companies' reason for doing so lay in its capacity as sole shareholder of Bannock Paving, and in aid of the procurement of insurance for the entirety of its operations, including Bannock Paving. During these inspections Langrock found various equipment problems, including the failure of backup warning devices, which he noted in his reports. Langrock passed on these findings to Bannock Paving.

■ Appellant alleges that these inspections amount to an undertaking by Parson Companies to provide safety inspections and safe working conditions on the Bannock Paving premises. However, we hold that the acts of Langrock and Parson Companies did not create a duty as to Parson for inspecting or monitoring. A sole shareholder undeniably has the right to inspect its corporate holdings. It has long been inherent in the law of corporations that within certain boundaries of reasonableness and except as limited by law, shareholders have the right to "see that their property is well managed, and to have access to the proper sources of knowledge in this respect." *Guthrie v. Harkness*, 199 U.S. 148, 154, 26 S.Ct. 4, 5–6, 50 L.Ed. 130 (1905), quoting *Cockburn v. Union Bank*, 13 La.Ann. 289. *See also Hobbs v. Tom Reed Gold Mine Co.*, 129 P. 781, 164 Cal. 497 (1913); *Melup v. Rubber Corp. of America*, 181 Misc. 826, 43 N.Y.S.2d 444 (1943); *Riffle v. Robert L. Parker Co.*, 19 Ariz. App. 100, 505 P.2d 268 (1973); 18 C.J.S. Corporation § 500. No duty is created when the shareholder inspection is done for the purposes of procurement of its own insurance. The exercise of this right by Parson Companies did not amount to undertaking Bannock Paving's duty of inspecting the work site for safety purposes.

We think that the focus of the parties and the district court on the application of § 324A of the Restatement 2d of Torts is misguided. Both parties assume its status as law in Idaho, appellant by arguing its applicability, and respondent by denying that the facts of the case bring it into operation. The district court reinforced this misapprehension by holding that "[t]he provisions of Section 324A have been approved and applied by the Idaho Supreme Court in *Rawson v. United Steelworkers of America*, 111 Idaho 630, 726 P.2d 742 (1986), *vacated on other grounds*, 482 U.S.

901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987)." In *Rawson*, this Court overturned a summary judgment on the grounds that it could not be said as a matter of law that the failure of the defendant to report dangerous conditions on the job site following an inspection was not the proximate cause of the injury. The case was remanded to the trier of fact on that issue.

However, *Rawson* involved a duty on the part of the defendant created by the contractual Collective Bargaining Agreement. The Court's opinion expressly states:

> The record establishes that the Union's safety undertaking was not the act of a "Good Samaritan" but was, in fact, a substantial part of the Union's offering in consideration of the worker's membership and payment of dues. The Collective Bargaining Agreement provided for the Union's safety inspection function, which service was bought and paid for by union dues.

*Rawson*, 111 Idaho at 635, 726 P.2d 742. The Union's duty in that case was not predicated upon application of the Restatement of Torts, but was rather a duty established by contract.

There is nothing in the record to indicate that Parson Companies undertook to involve itself in Bannock Paving's safety operations in a manner giving rise to a duty to inspect for safety purposes. Thus, there was no undertaking to take any affirmative steps to maintain Bannock Paving's work site in a safe condition. Rather, the evidence clearly shows that Bannock Paving undertook to operate its own safety program without oversight by Parson Companies. No reasonable inference to the contrary may be drawn from the evidence in the record.

Accordingly, we affirm the district court's grant of summary judgment in favor of Parson Companies. No costs on appeal.

BAKES, C.J., and JOHNSON, and BOYLE, JJ., concur.

BISTLINE, Justice, dissenting.

I agree with the majority that "[t]he mere fact of a parent subsidiary relationship does not impose a duty on the parent on behalf of the subsidiary or its employees." At 1032, 793 P.2d at 705. However, I do not agree with the majority that summary judgment was warranted on the issue of whether Parson Companies undertook a duty on behalf of Bowling, duty which by well-established case precedent it would have been obliged to perform in a non-negligent manner.

It is apparent from the record and inferences reasonably drawn therefrom that while the day-to-day responsibility for the safety of Bannock's operations rested with Bannock, oversight of the complex matters such as compliance with OSHA requirements and with requirements imposed by Parson's and Bannock's liability insurer was the responsibility of Langrock, a Parson employee. Such an arrangement makes sense in the context of Parson Companies' overall structure: It is a large company made up of at least nine smaller, wholly owned subsidiaries, all having something to do with construction or construction supplies, and doing business in at least three states, Idaho, Wyoming, and Utah. R. at 20–27. Most of the clerical office employees are located in Utah, where Parson Companies is headquartered. R. at 24. The President of Bannock Paving, Mike Wood, is also Bannock Paving's CEO, and in addition he is the Executive Vice President of Parson Companies. R. at 54. Each of the smaller construction or supply companies, including Bannock Paving, is responsible for its own *day-to-day* operations, including maintenance and safety of equipment. R. at 55, 59. Parson Companies has not "assumed *completely* the duty of providing a safe work place for [Bannock Paving's] employees." R. at 60. However, as the parent company, Parson Companies is responsible for acquiring workers' compensation and liability insurance for itself and all of its wholly owned subsidiaries. R. at 60, Deposition of David Langrock at 57. In order to obtain that insurance, Parson Companies must represent to the insurer that each of the subsidi-

aries is complying with applicable safety regulations, including those imposed by OSHA. OSHA is a very complex set of statutes and regulations. Therefore, rather than requiring the safety officer of each of the subsidiaries to master those regulations, Parson Companies employs an expert, Langrock, to oversee OSHA compliance and to relay the fact of that compliance to the companies' insurer. Deposition of David Langrock at 62. Thus, while Parson Companies, through Langrock, does not oversee the day-to-day safety operations at the subsidiaries, it is well-informed about each of the subsidiaries' safety measures, or lack thereof. The information Parson Companies had included knowledge that several of Bannock Paving's vehicles were being operated without audible back-up signals, in direct violation of OSHA regulations. Parson Companies, through Langrock, has authority to influence safety procedures at its subsidiaries if those procedures do not comply with OSHA regulations or in some other way jeopardize the insurance which Parson Companies purchases on Bannock Paving's behalf.

A summary judgment is not appropriate unless the facts and all inferences drawn therefrom, when reviewed in a light favorable to the non-moving party, demonstrate that there is no material question of fact which remains unresolved. *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986). All too frequently, it seems, the majority of this Court is willing to turn its face away from this standard when so doing suits its purposes. This is one of those occasions. If Parson Companies, as a reasonable person, should have realized that there was a risk of foreseeable harm to a person or persons, such as Carl Bowling, it became Parson Companies' duty to do whatever a reasonable person would have done to avoid the harm. This is simply a statement of the basic rule in negligence cases. While the fact of a parent-subsidiary relationship does not *create* such a duty on the part of the parent, it does not necessarily *negate* such a duty, either. As the discussion in this opinion makes abundantly clear, the facts which were presented in this case, and reasonable inferences drawn from those facts, raise a

significant question concerning whether Parson Companies had such a duty with regard to the safety of Bannock Paving's operations which directly affected Carl Bowling's safety. That significant question merits resolution by jury trial. The majority's refusal to allow that trial is yet another in a seeming increase in unwarranted summary dispositions of serious tort actions which are in turn rather summarily upheld by this Court. It will be both a difficult and a sad task for counsel to explain to Mrs. Bowling just why it is the facts and circumstances of her husband's death are not laid out for a jury's consideration.