34 P.3d 1069

David Leslie UDY, Plaintiff,

v.

CUSTER COUNTY, Defendant.

Roy Chivers and Susan Chivers, husband and wife, and Fred McDonald and Roxanna McDonald, husband and wife, Plaintiffs–Appellants,

v.

Custer County, Idaho, and Mickey Roskelley, in his official capacity as Sheriff of Custer County, Idaho, Defendants Respondents.

David Leslie Udy, Plaintiff–Appellant,

v.

Custer County, Defendant–Respondent.

Roy Chivers and Susan Chivers, husband and wife, and Fred McDonald and Roxanna McDonald, husband and wife, Plaintiffs,

v.

Custer County, Idaho, and Mickey Roskelley, in his official capacity as Sheriff of Custer County, Idaho, Defendants.

Nos. 26345, 26346.

Supreme Court of Idaho,
Pocatello, May 2001 Term.

Oct. 24, 2001.

Douglas W. Crandall, Boise, argued for appellants Chivers and McDonald.

Cooper & Larsen, Pocatello, for appellant Udy. Reed W. Larsen argued.

Naylor & Hales, P.C., Boise, for respondents. Kirtlan G. Naylor argued.

WALTERS, Justice.

This is an appeal from the district court's decision granting summary judgment in a negligence action in favor of Respondents Custer County and Sheriff Mickey Roskelley. The district court held that Sheriff Roskelley did not have a legal duty to remove or warn of rocks on a State highway. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 1998, David Udy was driving his truck on Highway 75 approximately two miles north of Clayton in Custer County. Roy Chivers and Roxanna McDonald were passengers in Udy's truck. While driving, Udy encountered a large rock in the road. Udy was unable to avoid hitting the rock as another vehicle was approaching in the opposite lane. Udy's vehicle struck the rock, blowing out the right front tire and causing Udy to lose control. The truck subsequently rolled, causing injuries to Udy and his passengers.

On the night before the accident, Custer County Sheriff Mickey Roskelley and his wife had traveled on Highway 75 to Clayton to serve some papers. Roskelley admitted that on his return from Clayton, he observed several small rocks on the fog line approximately one-third of a mile from the scene of Udy's subsequent accident. Sheriff Roskelley did not remove the rocks or notify other deputies or the Idaho Transportation Department (ITD) of the presence of the rocks.

On January 8, 1999, Udy filed a complaint against Sheriff Roskelley and Custer County alleging that Roskelley observed and negligently failed to remove from the highway the rock Udy later struck with his vehicle. The Chivers and McDonalds also filed a complaint against Roskelley and the county alleging injuries as a result of Roskelley's negligence in leaving the rock on the highway. The defendants subsequently filed a motion for summary judgment. On February 8, 2000, the district court granted the defendants' motion, ruling that as a matter of law, Sheriff Roskelley owed no duty to remove or warn of the rock struck by Udy's vehicle. Udy, the Chivers, and the McDonalds appeal the district court's decision. The question presented on appeal is whether Sheriff Roskelley owed a duty of care to the Appellants to warn of or remove the rocks on Highway 75.

## DISCUSSION

### A. Sheriff Roskelley's Duty

#### 1. Statutory Duty Under Idaho Code Section 31–2202

We initially examine the Appellants' argument that the district court erred by ruling that Sheriff Roskelley does not have a statutory duty to remove obstructions from

the highway. It is clear that there is no statute explicitly placing a duty on county sheriffs to remove rocks or obstructions from highways, and the Appellants do not assert otherwise. In addition to the absence of such an express mandate, the district court held that there was no duty implicitly existing by virtue of any other statutory authority. The Appellants disagree and challenge the district court's conclusion that the IDT has an exclusive duty to maintain Custer County's highways. They assert that the legislature, through Idaho Code section 31–2202, intended to impose a duty on county sheriffs to protect against hazards on the physical surface of the highway. The Appellants, however, acknowledge that there is no authority for their argument. Instead, focusing on I.C. § 31–2202(13), they assert that a common sense reading of the statute implies that a county sheriff owes a duty to remove or alert someone of the presence of the rocks on the surface of the road if the rocks pose a hazard to the traveling public. We disagree.

▆▆▆ The Appellants' arguments raise an issue of statutory construction, which is subject to our free review. See *City of Sun Valley v. Sun Valley Co.*, 128 Idaho 219, 221, 912 P.2d 106, 108 (1996); *Harris v. Dep't of Health & Welfare*, 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1992). Interpretation of a statute begins with an examination of the statute's literal words. See *In re Permit No. 36–7200*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992); *Ada County v. Gibson*, 126 Idaho 854, 856, 893 P.2d 801, 803 (Ct.App.1995). If the language of the statute is unambiguous, "the clear expressed intent of the legislature must be given effect and there is no occasion for construction." *Ada County Assessor v. Roman Catholic Diocese*, 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). See also *Wolfe v. Farm Bureau Ins. Co.*, 128 Idaho 398, 404, 913 P.2d 1168, 1174 (1996); *State v. Watts*,

131 Idaho 782, 784, 963 P.2d 1219, 1221 (Ct. App.1998).

Idaho Code section 31–2202 provides, among a lengthy list of duties, that each county sheriff shall:

13. Work in his county with the Idaho state police in the following respects:

(a) Require all persons using the highways in the state to do so carefully, safely and with exercise of care for the persons, property and safety of others;

(b) Safeguard and protect the surface and other physical portions of the state highways. . . .

The plain and ordinary meaning of this statute suggests that a sheriff is to work with the Idaho State Police to protect the highways surfaces from damage. This would not appear to include a duty to remove rocks or other obstructions from the State's highways, nor a duty to communicate to some other person or entity the need for removal of rocks or obstructions. The language instead indicates that law enforcement personnel are to make sure that vehicles do not damage the physical surface of the highway. Had the legislature intended to impose a duty on county sheriffs to remove or notify someone of the presence of highway obstructions, it could easily have done so. As the district court observed in this case, adding a phrase like "maintaining the state highways for traffic safety" to I.C. § 31–2202 could reasonably be interpreted to include the removal of obstructions. The Court must assume, however, that the legislature did not include such a phrase because it did not want to impose this duty on county sheriffs as a matter of statutory liability.

▆▆▆ Instead, the legislature has placed the responsibility of maintaining State highways,[1] such as Highway 75, on the ITD.[2] Idaho Code section 40–201 imposes upon the

---

1. Idaho Code section 40–120(4) defines "State highway system" to mean "the principal highway arteries in the state, including connecting arteries and extensions through cities, and includes roads to every county seat in the state." Clearly, Highway 75, which is the primary route running north from Shoshone to Challis and is defined in the "Official Highway Map" issued by the ITD as a "Major State Highway" is one of the "principal highway arteries in the state."

2. We note that Idaho's counties are charged by statute with the duty of maintaining the highways within the county highway system. See I.C. § 40–604; *Freeman v. Juker*, 119 Idaho 555, 557, 808 P.2d 1300, 1302 (1991). Additionally, Idaho Code §§ 40–202, 40–203, 40–203A and 40–203B describe how counties and highway districts may establish highway systems of their own within their "respective jurisdiction[s]." These statutes also provide that, by agreement, maintenance duties may be shifted among the state, counties, cities and highway districts on

State the duty to "improve and maintain the highways" within its jurisdiction. I.C. § 40–201. *See also* I.C. § 40–502 (stating that all state highways shall be maintained by the ITD); *Roberts v. Transp. Dep't,* 121 Idaho 727, 731, 827 P.2d 1178, 1182 (Ct.App.1991); *State v. Smith,* 124 Idaho 671, 674, 862 P.2d 1093, 1096 (Ct.App.1993) (noting that the duty to maintain U.S. Highway 95 falls within ITD's jurisdiction as inside the boundaries of the State of Idaho). The presence of this statute indicates that the State of Idaho, through its Department of Transportation, has a statutory duty to remove rocks and other obstructions as part of its maintenance of the State's highways. We therefore hold that Sheriff Roskelley did not have a statutory duty to remove the rocks from Highway 75 or to notify anyone else of the need for removal of the rocks.

## 2. Duty Under the Common Law

■ No liability arises from the law of torts unless the defendant owes a duty to the plaintiff. *See Hoffman v. Simplot Aviation,* 97 Idaho 32, 539 P.2d 584 (1975). Generally, the question whether a duty exists is a question of law, over which we exercise free review. *See, e.g., Freeman v. Juker,* 119 Idaho 555, 808 P.2d 1300 (1991). This Court follows the rule that "one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). Further, there is a "general rule that each person has a duty of care to prevent unreasonable, foreseeable risks of harm to others." *Sharp v. W.H. Moore, Inc.,* 118 Idaho 297, 300, 796 P.2d 506, 509 (1990).

However, one also owes no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility. *See Coghlan v. Beta Theta Pi Fraternity,* 133 Idaho 388, 399, 987 P.2d 300, 311 (1999). With these principles in mind, we next examine whether Sheriff Roskelley owed a common law duty to warn of or remove the rocks from Highway 75.

### a. Voluntary Assumption of Duty

■ The Appellants first assert that the district court erred in finding that Sheriff Roskelley did not voluntarily assume a duty. They contend that because Sheriff Roskelley testified that it was his practice to remove or contact someone to remove obstructions from the highway, Sheriff Roskelley assumed a duty to remove the rocks, even if he did not have a statutory duty to do so. We disagree with the Appellants' argument.

■ This Court has recognized that it is possible to create a duty where one previously did not exist. "If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Featherston v. Allstate Ins. Co.,* 125 Idaho 840, 843, 875 P.2d 937, 940 (1994) (citing *Bowling v. Jack B. Parson Cos.,* 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990)). Liability for an assumed duty, however, can only come into being to the extent that there is in fact an undertaking. *See Bowling,* 117 Idaho at 1032, 793 P.2d at 705. Although a person can assume a duty to act on a particular occasion, the duty is limited to the discrete episode in which the aid is rendered. *See City of Santee v. County of San Diego,* 211 Cal.App.3d 1006, 259 Cal.Rptr. 757 (1989).[3]

---

certain highways. *See State v. Smith,* 124 Idaho 671, 674, 862 P.2d 1093, 1096 (Ct.App.1993). In this case, however, no evidence was offered by the Appellants or is evident from the record to show that some other entity or agency besides the State was involved in the maintenance of any part of Highway 75.

**3.** In *Santee,* a bicyclist suffered injuries when struck by an automobile in an improperly lighted intersection. The bicyclist sued the City of Santee, which sought indemnity from the County. The City argued that inasmuch as County sheriff deputies had previously reported street light outages, the County was obligated to continue per-

forming these acts of assistance because the City detrimentally relied on the County for this assistance. The court pointed out that if a future obligation to assist can be imposed based upon past acts, "an act of humanitarian assistance can become an albatross of mandatory obligation in the future," and the natural consequence will be to discourage people from assisting others in the first instance. *Santee,* 259 Cal.Rptr. at 763. In *Santee,* there was no evidence that any express promise was made to City officials to report light outages in the future, and the court therefore refused to find a duty to report the light outage on the occasion in question. *See id.* at 759–62 & n. 3.

In other words, past voluntary acts do not entitle the benefited party to expect assistance on future occasions, at least in the absence of an express promise that future assistance will be forthcoming. *See id.* at 762. *See also, Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 397 (Tex. 1991) ("A person's duty to exercise reasonable care in performing a voluntarily assumed undertaking is limited to that undertaking, and will not normally give rise to an obligation to perform additional acts of assistance in the future.").

Thus, while Sheriff Roskelley may have voluntarily removed rocks and other debris from the State's highways on prior occasions, the Court concludes that Sheriff Roskelley, by way of these prior actions, did not voluntarily assume a duty to remove the rocks from Highway 75 the night before the accident. There is nothing in the record indicating that Sheriff Roskelley increased the risk created by the rocks on Highway 75; instead, the risk created by the rocks remained unchanged. As the court noted in *Santee,* "nonfeasance which results in failure to eliminate a preexisting risk is not equivalent to nonfeasance which increases a risk of harm." 259 Cal.Rptr. at 762.

Accordingly, we hold that Sheriff Roskelley, despite evidence of prior acts of removal or notification, did not voluntarily assume a duty to remove the rocks he observed on Highway 75 the night before Udy's accident. To hold otherwise would be tantamount to holding that Sheriff Roskelley had a permanent duty to remove obstructions from the highway.

### b. General Duty to Exercise Ordinary Care

 Udy argues that Sheriff Roskelley has a general common law duty to remove or warn of obstructions on the highway. Udy first contends that a series of Idaho cases holding that a municipality has a duty to exercise "reasonable and ordinary care to keep its streets in a reasonably safe condition for ordinary travel," demonstrates that a similar, common law duty exists with respect to county sheriffs. *See, e.g., Smith v. City of Preston,* 97 Idaho 295, 298, 543 P.2d 848, 851 (1975). Udy, however, cites no authority, Idaho or otherwise, either establishing or

recognizing a common law duty for county sheriffs to remove or warn of obstructions on the State's highways.

Udy also asserts that cases from New York and Indiana establish that a state or county made be liable for a dangerous condition in a highway, if it has actual or constructive knowledge of the unsafe condition. *See Boger v. Lake County Commissioners,* 547 N.E.2d 257 (Ind.1989); *Siegel v. State of New York,* 56 Misc.2d 918, 290 N.Y.S.2d 351 (N.Y.Ct.Cl.1968). What Udy ignores, however, is that the source of the duty for the public entity, be it city, state, or county, stems from its custody and control over the road. This is true in New York, *see Ham v. Giffords Oil Co.,* 235 A.D.2d 457, 652 N.Y.S.2d 747, 748 (1997) ("A County owes a general duty of care to the wayfarers on the roads it owns, controls, or maintains."), Indiana, *see Templeton v. City of Hammond,* 679 N.E.2d 1368 (Ind.Ct.App.1997) ("The State and its counties have a duty to maintain and repair the roads within their control."), and elsewhere. *See Wells v. Stephenson,* 561 So.2d 1215, 1217 (Fla.Dist.Ct. App.1990) ("Cases holding an entity liable for failure to report, repair, or maintain a traffic control device are based on the premise that the entity had some duty, custody, or control over the sign at the intersection."); *Schomp v. Averette,* 591 So.2d 56 (Ala.1991) (holding that county commission had no duty to maintain intersection where accident occurred because intersection was under exclusive control of State of Alabama Highway Department).

As noted above, the ITD is charged with the responsibility of maintaining Highway 75. *See* I.C. § 40–201; I.C. § 40–502. Because the ITD retains exclusive custody and control over the maintenance of the highway by virtue of statutory authority, Sheriff Roskelley cannot be assessed with responsibility for the same activities through application by the courts of a common law principle. I.C. § 73–116; *State v. Iverson,* 79 Idaho 25, 310 P.2d 803 (1957); *Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc.,* 93 Idaho 719, 471 P.2d 574 (1970) (common law principles abrogated by statutory enactments).

We also take care to note that this is not a situation where Sheriff Roskelley created a foreseeable risk of harm through his own affirmative conduct. Udy's argument is instead predicated on the notion that Sheriff Roskelley, because he is a law enforcement officer, owes a greater duty to the public than the average person. The District of Columbia Court of Appeals addressed a similar argument in *Warren v. District of Columbia*, concluding that:

> [T]he allegations of negligence in the present case derive solely from defendants' status as police employees and from plaintiffs' contention that defendants failed to do what reasonably prudent police employees would have done in similar circumstances. The difference is between ordinary negligence on one hand and a novel sort of professional malpractice on the other. A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.

444 A.2d 1, 8 (D.C.1981). *See also Williams v. State*, 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137, 139–40 (1983) (noting general principles that "one has no duty to come to the aid of another" and that "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act" are often "muddied by widely held misconceptions concerning the duty owed by police to individual members of the general public.").

Viewed in this sense, Udy's claims are in reality claims for negligent police protection for which there can be no recovery absent a special relationship with the victim. *See Lundgren v. City of McCall*, 120 Idaho 556, 557–58, 817 P.2d 1080, 1081–82 (1991). *Cf. Isabella County v. Michigan*, 181 Mich.App. 99, 449 N.W.2d 111 (1989) (state police officer who failed to report downed traffic sign was not liable to motorist who was injured in collision with that sign absent evidence of special relationship between officer and injured motorist giving rise to duty on officer's

part); *Alderman v. Lamar*, 493 So.2d 495 (Fla.Dist.Ct.App.1986) (no duty to decedent absent special relationship to report or place upright a leaning stop sign causing fatal automobile collision). Here, the record does not establish, nor does Udy argue that he or his passengers were in a special relationship with Sheriff Roskelley. Thus, the fact that Udy's accident may have been prevented through reasonable law enforcement actions is insufficient to establish a duty to the Appellants or otherwise form the basis for Sheriff Roskelley's liability in tort.

The Chivers and McDonalds, on the other hand, citing the Court's decision in *Ransom v. Garden City*, 113 Idaho 202, 743 P.2d 70 (1987), argue that where an officer of the law should foreseeably know that his failure to act may create an unusual risk of harm to others, he is under a duty to take reasonable precautions to avoid the harm from occurring. Their reliance on *Ransom*, however, is misplaced.

*Ransom* was a negligent entrustment case in which the plaintiffs were injured when their vehicle was struck by another vehicle that was being driven the wrong way down a one-way street. *See id.* at 203, 743 P.2d at 71. The driver of the vehicle had been the passenger when the vehicle had been previously stopped by a police officer. The officer, although concluding that both the driver and the passenger were intoxicated, gave the keys to the passenger with instructions not to drive. *See id.*

A close examination of the Court's decision in *Ransom* reveals that the source of the duty in that case was the officer's control over the vehicle at the time of the stop. *See id.* at 208, 743 P.2d at 76 ("Where a person has a right to control a vehicle, he must exercise ordinary care and not permit another to use it in circumstances where he knows or should foreseeably know that such use may create an unreasonable risk of harm."). Because the officer exercised legal control over the vehicle at the time of the stop, the Court rejected the defendant's argument that the tort of negligent entrustment requires ownership of the vehicle. *See id.* Here, as we mentioned above, the duty to maintain, and therefore the custody and con-

trol, of Highway 75 lay with the ITD. We therefore decline to impose a common law duty on Sheriff Roskelley to remove or warn of the rocks on Highway 75.

## CONCLUSION

For the above reasons, we affirm the district court's summary judgment in favor of Sheriff Mickey Roskelley and Custer County. Costs, but not attorney fees are granted to the Respondents pursuant to Idaho Appellate Rule 40.

Chief Justice TROUT and Justice SCHROEDER and EISMANN concur.

Justice KIDWELL, specially concurring.

The analysis of the majority opinion appears to reflect the law of Idaho and probably most other jurisdictions. To be more specific, no common law or statutory duty is owed or due to the plaintiffs in this case under the facts presented. Therefore, I have no alternative, but to concur.

However, I am concerned that the factual situation in the present case could be cited as precedent for the proposition that a public official has no civil duty, no matter how hazardous the situation, to take any action to prevent possible injury to members of the public. An example is appropriate to illustrate my concerns: a sheriff in his patrol car sees a hazardous rockslide around a blind curve. Although his radio works, he does not use it to notify those charged with maintaining the roadway. A person is killed or seriously injured because the rockslide was not removed from the road. In this situation, a question arises as to whether the legal system should impose some minimal duty on a public official charged with a caretaking responsibility. The question of whether there should be a duty looms larger when the hazard is great and the action necessary to rectify the problem is minimal.

The concept of when the legal system does or should impose a legal duty is elusive.

There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability.... In the decision whether or not there is a duty, many factors interplay: the hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where loss should fall.

William L. Prosser, *Palsgraf Revisited*, 52 Mich. L.Rev. 1, 15 (1953) (footnote omitted).

By analogy, Judge Learned Hand, speaking for the majority in a classic tort case, provides some guidance. *See The T.J. Hooper*, 60 F.2d 737 (2d Cir.1932). The facts of this case are well known: two tugboats lost their barges and cargoes during a predicted storm in the Atlantic Ocean. Had the tugs been equipped with working radios, the tug masters would have known about the storm and could have likely avoided it. At issue in the case was whether the tugboat owners had a duty to equip the tugs with working radios. Although at the time, only one tugboat line equipped its tugs with radios, the court held that not using available technology to avoid the storm was a cause of the injury sustained by the companies. Therefore, a duty to use the means available to avert an accident existed.

In the present case, if Sheriff Roskelley had used a communication device to inform the Department of Transportation that a hazard existed on the road, the accident and subsequent litigation could have been prevented. It seems that placing a duty upon Sheriff Roskelley to make a very brief telephone call for the protection of motorists is appropriate.