179 P.3d 352

Carolyn BOOTS and William Boots, husband and wife, and Landon BOOTS, a minor child by and through his parents Carolyn and William Boots, and Jason Boots, a minor child by and through his parents Carolyn and William Boots, Plaintiffs–Appellants,

v.

Jack and Karen WINTERS, husband and wife, Defendants–Respondents.

No. 33489.

Court of Appeals of Idaho.

Feb. 22, 2008.

Crandall Law Office, Boise, for appellant. Douglas W. Crandall argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent. Portia Jenkins argued.

PERRY, Judge.

Carolyn Boots, William Boots, Landon Boots, and Jason Boots (the Bootses) appeal from the district court's order granting summary judgment to Jack Winters and Karen Winters (the Winterses). For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

The Winterses rented a residence with a fenced backyard to Mario Martinez in October 2002. Martinez moved into the residence with his family, a white dog, and a brown dog. Near the residence rented to Martinez, Carolyn and William Boots lived with their sons Jason and Landon, who were nine and eleven years old respectively. While Jason and Landon were walking to their school bus stop in the alley abutting the fenced backyard of the residence rented to Martinez on the morning of November 4, 2002, they noticed Martinez's white dog was in the alley outside of the fence. Landon and Jason returned the white dog to the backyard but, soon after they did so, the brown dog attacked Landon. Jason ran down the alley to the Bootses' residence and notified his mother, Carolyn, that Martinez's brown dog was attacking Landon. Carolyn, who had been in

the shower, went to the scene wearing only a bath towel. Carolyn entered the backyard and separated the brown dog from Landon, but the brown dog then attacked Carolyn. The police arrived and stopped the attack on Carolyn by shooting and killing the brown dog. Landon and Carolyn both suffered injuries as a result of the brown dog's attacks.

The Bootses filed a complaint setting forth fourteen tort claims, including claims of common-law negligence and negligence per se against the Winterses.[1] The Winterses filed an answer to the complaint and a motion for summary judgment. In support of the motion, the Winterses filed affidavits, documents regarding the rental agreement, photographs of the brown dog after it had been shot inside of the backyard, police reports that included the Bootses' description of the events of that morning, and excerpts of a transcript from a deposition of Martinez. The police reports submitted by the Winterses showed that the boys told the police that Jason had been kicking the fence and swinging his jacket over it at the brown dog just prior to the attack, that the brown dog grabbed and pulled Jason's jacket into the backyard, and that Landon climbed over the fence to retrieve the jacket but was attacked before he could climb the fence again. The Bootses did not file a response or any evidence in opposition to the Winterses' motion for summary judgment. At a hearing, the Bootses argued in opposition to the motion and disputed the facts presented by the Winterses' evidence but conceded that the district court must consider only the evidence submitted by the Winterses' in ruling on the motion. After allowing the Winterses to file a reply brief to the Bootses' oral argument, the district court granted summary judgment for the Winterses on all claims against them. With regard to the common-law negligence claim, the district court ruled that the Winterses satisfied their legal duty to third parties because that duty relates to the physical premises only and not the activities that take place on the premises. The Bootses appeal,

---

1. The Bootses also named as defendants Martinez and his wife. Martinez and his wife did not file an answer to the complaint. The Bootses, however, did not move for a default judgment against Martinez and his wife, and they are not parties to this appeal.

challenging dismissal of their common-law negligence claim.[2]

## II.

## STANDARD OF REVIEW

We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.,* 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox,* 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct.App.1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder,* 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct.App.1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini–Mart, Inc.,* 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct.App.2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a

genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders,* 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick,* 126 Idaho at 312, 882 P.2d at 479.

## III.

## ANALYSIS

A cause of action for common-law negligence in Idaho has four elements: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage. *Nation v. State, Dept. of Corr.,* 144 Idaho 177, 189, 158 P.3d 953, 965 (2007). The district court ruled that the Bootses had not raised a genuine issue of material fact as to whether the Winterses

---

**2.** Counsel for the Bootses on appeal is not counsel that represented the Bootses in the district court.

had a duty to protect the Bootses from the brown dog. The Bootses assert that the district court erred because the Winterses had a duty to maintain the rented premises in a safe condition, had a general duty to protect third parties from their tenant's dog, and assumed a duty to protect third parties from Martinez's brown dog. The existence of a duty is a question of law over which this Court exercises free review. *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999).

## A. Premises Liability

The Bootses assert that the Winterses had a duty, as landlords, to prohibit the presence of Martinez's brown dog on the property because the dog became a physical condition of the property which rendered the rented premises unsafe to third parties.

■ The general rule of premises liability is that one having control of the premises may be liable for failure to keep the premises in repair. *Heath*, 134 Idaho at 713, 8 P.3d at 1256. The distinction between trespassers, licensees, and invitees is the controlling test in determining the scope and extent of the duty of care owed by landowners to entrants. *O'Guin v. Bingham County*, 139 Idaho 9, 14, 72 P.3d 849, 854 (2003). *See also Holzheimer v. Johannesen*, 125 Idaho 397, 399, 871 P.2d 814, 816 (1994). A landowner owes an invitee the duty to keep the premises in a reasonably safe condition or to warn of hidden or concealed dangers. *Id.* at 400, 871 P.2d at 817. A landowner is only required to share with a licensee knowledge of dangerous conditions or activities on the land. *Id.* The duty owed by a landowner to a trespasser is to refrain from wanton or willful acts that occasion injury. *O'Guin*, 139 Idaho at 14, 72 P.3d at 854.

Relying on *Turpen*, however, the Winterses assert that a landlord does not have a responsibility under a theory of premises liability to protect third parties from activities taking place on the rented property which in no way implicate the physical condition of the property. In *Turpen*, the family of a decedent sued a landlord, contending that the landlord was negligent with respect to known partying activities of his renters

and their guests. Referring to premises liability, our Supreme Court held that the landlord could not be found liable, stating:

> While we have previously recognized that a landlord may have responsibilities for assuring that the rented premises are safe, we have imposed that duty only as to the physical premises. Here, we are asked to impose a responsibility for activities taking place on the rented property which in no way implicate the physical condition of the house or surrounding property.

*Turpen*, 133 Idaho at 248, 985 P.2d at 673.

■ We agree with the Winterses that the presence of Martinez's brown dog did not implicate the physical condition of the premises rented to Martinez by the Winterses. Rather, keeping the brown dog on the premises constituted an activity taking place on the rented property. Thus, regardless of whether Landon and Carolyn Boots were invitees, licensees or trespassers on the property, the Winterses owed them no duty under the theory of premises liability to protect them from injury caused by Martinez's dog.

## B. General Duty to Exercise Ordinary Care

The Bootses assert that the Winterses had a general duty to prevent dangerous animals from being kept on the rented property. The Winterses assert that they did not have a general duty to prevent the injuries inflicted by the brown dog because the Winterses did not own the dog and did not possess actual knowledge that the dog had dangerous propensities.

■ Our Supreme Court has suggested that premises liability is not the exclusive source of duties where a landowner is involved. Instead, circumstances may give rise to a general duty of care owed to third parties. *See Turpen*, 133 Idaho at 247–48, 985 P.2d at 672–73. As a general principle, every person, in the conduct of his or her business, has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others. *Id.* at 247, 985 P.2d at 672; *Sharp v. W.H. Moore Inc.*, 118 Idaho 297, 300, 796 P.2d 506, 509 (1990). However, our Supreme Court has also made clear that not

every person or entity owes a tort duty to everyone else in all circumstances. *Turpen,* 133 Idaho at 247–48, 985 P.2d at 672–73.

 In determining whether a duty will arise in a particular context, our Supreme Court has identified several factors to consider. *Turpen,* 133 Idaho at 247, 985 P.2d at 672. The factors include the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. *Id.; Rife v. Long,* 127 Idaho 841, 846, 908 P.2d 143, 148 (1995). Where the degree or result of harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. *Turpen,* 133 Idaho at 248, 985 P.2d at 673; *Sharp,* 118 Idaho at 300–01, 796 P.2d at 509–10. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. *Turpen,* 133 Idaho at 248, 985 P.2d at 673; *Sharp,* 118 Idaho at 301, 796 P.2d at 510. We engage in a balancing of the harm only in those rare situations when we are called upon to extend a duty beyond the scope previously imposed or when a duty has not previously been recognized. *Turpen,* 133 Idaho at 248, 985 P.2d at 673.

We again find *Turpen* instructive. As noted above, the family of a decedent in that case, contended that the decedent's landlord was negligent with respect to known partying activities of his renters and their guests. The decedent was a college student who died of alcohol poisoning while a social guest at a home the landlord had leased to two other college students. The landlord had been told of some parties held at the house by past tenants who had been students at the college. The landlord, however, had received no com-

plaints about the existing lessees or their guests. The Supreme Court concluded that, although the harm to the social guest was undoubtedly great, the landlord's only ability to prevent the harm was by refusing to rent the premises at all. *Id.* at 248, 985 P.2d at 673. The Court held that there was no basis for imposing a duty on the landlord to thoroughly screen tenants or refuse to rent the premises to college students. *Id.* The Court further held that the landlord therefore had no duty under the very limited facts presented. *Id.*

 In the present case, we are aware of no Idaho authority imposing a duty on a landlord to protect third persons from a tenant's dog and, therefore, we must determine whether a duty should be recognized on the facts presented. Based on Jack Winters' affidavit and Martinez's deposition testimony, Martinez never informed the Winterses of any dangerous propensities of the brown dog. Martinez asserted during the deposition that the fence between the backyard and the alley was in good repair at the time of the attack. Additionally, the police officer's affidavit indicates that Jason Boots provoked the brown dog by kicking the fence and swinging his jacket at the dog. The dog attacked Landon Boots only after he climbed over the fence to retrieve Jason's jacket, which the dog had pulled into the backyard. Carolyn Boots also climbed over the fence prior to being attacked in the backyard. The harm suffered by Landon and Carolyn appears to have been great. The degree of foreseeability, however, was very low because the Winterses had no knowledge of any dangerous propensities of the brown dog, the initial attack on Landon appears to have been provoked, and both attacks occurred only after the victims climbed the fence which confined the dog to the rented property. Furthermore, requiring landlords to investigate whether a lessee's pet is dangerous prior to allowing the lessee to keep the pet on the rented premises would impose a heavy burden on landlords and impede the ability of tenants to own pets.[3] We decline the Bootses' invitation to

---

3. Indeed, the record does not include evidence that the Winterses would have been able to determine prior to the attacks that the brown dog was

dangerous. The Bootses assert that the dog was a pit bull and was therefore dangerous. The record contains an unclear photocopy of the pho-

adopt such a requirement as the public policy of the State of Idaho. On the facts presented at summary judgment, we hold that the Winterses did not owe a general duty to protect the Bootses from Martinez's brown dog.

■■■■ At oral argument, the Bootses also asserted for the first time on appeal that the Winterses had a statutory duty pursuant to I.C. § 25–2805(2). A landowner may be liable under a theory of negligence per se where the landowner violates a statutory duty. *O'Guin v. Bingham County*, 142 Idaho 49, 54, 122 P.3d 308, 313 (2005). The Bootses stated a claim of negligence per se in their complaint and presented argument supporting this theory at the summary judgment hearing in the district court. The Bootses did not, however, assert this negligence per se argument in their appellate briefs. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct.App.1997).

■■■■ Even if the issue were properly presented on appeal, however, it provides no basis for the Bootses' claim. The district court ruled that the Bootses did not raise a genuine issue of material fact as to their negligence per se claim because the evidence indicated that the brown dog was provoked prior to the attack. The statute the Bootses relied upon states:

> Any dog which, *when not physically provoked*, physically attacks, wounds, bites or otherwise injures *any person who is not trespassing*, is vicious. It shall be unlawful for the owner or for the owner of premises on which a vicious dog is present to harbor a vicious dog outside a secure enclosure. A secure enclosure is one from which the animal cannot escape and for which exit and entry is controlled by the owner of the premises or owner of the animal. Any vicious dog removed from the secure enclosure must be restrained by a chain sufficient to control the vicious dog. Persons guilty of a violation of this subsection, and in addition to any liability as

provided in section 25–2806, Idaho Code, shall be guilty of a misdemeanor. For a second or subsequent violation of this subsection, the court may, in the interest of public safety, order the owner to have the vicious dog destroyed or may direct the appropriate authorities to destroy the dog.

I.C. § 25–2805(2) (emphasis added). The statute does not create a duty on a landowner for an attack by a vicious dog harbored on his or her property when the victim provoked the dog or trespassed on the property. The only evidence in the record at summary judgment indicated that Jason provoked the brown dog's attack by kicking the fence and swinging his jacket at the dog. Additionally, both Landon and Carolyn Boots climbed over the fence prior to being attacked in the backyard. Based on the only evidence in the record, it is clear that the brown dog was provoked and that both victims were trespassing when attacked. Thus, the Winterses owed no duty to the Bootses under I.C. § 25–2805(2).

## C. Assumption of Duty by Landlord

The Bootses next assert that the Winterses assumed a duty to protect third parties from Martinez's dog because the Winterses regulated the type and size of the dogs they allowed on the rental property. The Winterses assert that they did not regulate the type or size of dog that Martinez could keep on the property and thus did not assume a duty to protect the Bootses from Martinez's dog.

■■■■ The Idaho Supreme Court has recognized that it is possible to create a duty where one previously did not exist. If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner. *Udy v. Custer County*, 136 Idaho 386, 389, 34 P.3d 1069, 1072 (2001); *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 400, 987 P.2d 300, 312 (1999). *See also Sharp*, 118 Idaho at 300, 796 P.2d at 509. Liability for an assumed duty, however, can only come into being to the extent that there is in fact an undertaking. *Udy*, 136 Idaho at 389, 34 P.3d at 1072. *See also Bowling v.*

---

tograph of the brown dog after it had been shot in the backyard. Based on this photograph, it is not possible to determine that the dog was a pit

bull. Additionally, Martinez asserted during his deposition that the dog had never previously exhibited dangerous propensities.

*Jack B. Parson Cos.,* 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990). Although a person can assume a duty to act on a particular occasion, the duty is limited to the discrete episode in which the aid is rendered. *Udy,* 136 Idaho at 389, 34 P.3d at 1072.

In the present case, there is no evidence that the Winterses volunteered to help third parties, such as the Bootses, by regulating the type or size of dog that Martinez could keep on the rented property. Jack Winters averred in an affidavit that Martinez paid a deposit of $100 to keep one large dog on the premises, and a copy of the rental agreement confirms that Martinez paid a $100 pet deposit. Martinez testified during his deposition that he informed the Winterses that he had two medium-sized dogs which he intended to keep on the premises and, when Jack Winters asked him what type of dogs he had, Martinez informed him the dogs were "mutts." There is no evidence, however, that the Winterses restricted the type or size of the dogs Martinez could keep on the premises. Additionally, there is no evidence in the record that the Winterses secured the pet deposit with the intent to protect third parties from Martinez's dogs. The Bootses' reliance on *Sharp* is therefore misplaced. In that case, a landlord provided a security service for his tenant's business, and an employee of the business was assaulted and raped by an intruder who apparently gained access to the building through an unlocked door. The Supreme Court held that once the landlord and property manager had initiated a locked door policy and had employed a security service with the intent of keeping the doors locked, they undertook a duty to keep doors locked. *Sharp,* 118 Idaho at 300, 796 P.2d at 509. In contrast, there is no evidence that the Winterses took any actions with the intent of protecting third parties from Martinez's brown dog, and the Winterses therefore assumed no duty to provide such protection for the Bootses.

**D. Costs and Attorney Fees on Appeal**

The Winterses request costs and attorney fees incurred in defending against this appeal. An award of attorney fees may be granted under I.C. § 12–121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett,* 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct.App.1995). The Winterses assert that I.C. § 12–121 entitles them to attorney fees because the Bootses brought this appeal after they failed to provide briefing or affidavits to the trial court in opposition to the Winterses' motion for summary judgment. The Bootses assert that an award of attorney fees is not appropriate because a landlord's liability for injuries inflicted by a tenant's dog is an issue of first impression in Idaho. The Bootses also assert that their failure to respond adequately to the Winterses' motion for summary judgment in the trial court was due to the failure of the Bootses' prior counsel. Some of the Bootses' arguments on appeal, without support in the evidence, could be considered frivolous, unreasonable, or without foundation. We decline to award attorney fees because this case presented an issue of first impression in Idaho. Costs incurred in defending against this appeal, however, are awarded as a matter of course to the Winterses because they are prevailing parties. *See* I.A.R. 40(a).

## IV.

## CONCLUSION

The Winterses owed the Bootses no duty to protect them from injury caused by Martinez's brown dog under a theory of premises liability, under a general duty to protect the Bootses from Martinez's brown dog, or under I.C. § 25–2805(2). Additionally, because there is no evidence that the Winterses took any actions with the intent of protecting third parties from Martinez's brown dog, the Winterses assumed no duty to provide such protection for the Bootses. Therefore, the district court's order granting summary judgment is affirmed. The Winterses are awarded costs, but not attorney fees, incurred in defending this appeal.

Chief Judge GUTIERREZ and Judge LANSING concur.